1  ERIC BALL (CSB No. 241327)
   eball@fenwick.com
2  MEGHAN E. FENZEL (CSB No. 324139)
   mfenzel@fenwick.com
3  LAUREN E. BORDER (CSB No. 327770)
   lborder@fenwick.com
4  FENWICK & WEST LLP
   801 California Street
5  Mountain View, CA 94041
   Telephone: 650.988.8500
6  Facsimile: 650.938.5200

7  SAPNA S. MEHTA (CSB No. 288238)
   smehta@fenwick.com
8  JANIE Y. MILLER (CSB No. 312715)
   jmiller@fenwick.com
9  FENWICK & WEST LLP
   555 California Street, 12th Floor
10 San Francisco, CA 94104
   Telephone: 415.875.2300
11 Facsimile: 415.281.1350

12

13 Attorneys for Defendants
   NUTRISYSTEM, INC. and
14 NUTRI/SYSTEM IPHC

15                  UNITED STATES DISTRICT COURT

16                 CENTRAL DISTRICT OF CALIFORNIA

17                       WESTERN DIVISION

| | |
|---|---|
| 18  PACIFIC PACKAGING CONCEPTS, INC., a California corporation, | Case No.: 2:19-cv-04755-ODW(Ex) |
| 19 | **MEMORANDUM OF POINTS AND** |
| 20                  Plaintiff, | **AUTHORITES IN SUPPORT OF NUTRISYSTEM'S MOTION FOR** |
| 21         v. | **PARTIAL SUMMARY JUDGMENT** |
| 22  NUTRISYSTEM, INC., a Delaware corporation; NUTRI/SYSTEM IPHC, | **[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]** |
| 23  INC., a Delaware corporation; and DOES 1-10, inclusive, | |
| 24                  Defendants. | Hearing:    February 22, 2021 |
| 25 | Time:       1:30 p.m. |
| | Ctrm:       5D, 5th Floor |
| 26 | Judge:      Hon. Otis D. Wright II |
| 27 | Trial Date: April 20, 2021 |
| 28 | |

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................... 1

II.   BACKGROUND .................................................................................. 2

   A.   Nutrisystem FreshStart ............................................................ 2

   B.   Pacific Packaging Concepts, Inc.'s Vitamins ....................... 4

   C.   A Crowded Field of Fresh Start Marks ................................. 6

   D.   This Dispute .............................................................................. 8

III.   LEGAL STANDARD ......................................................................... 10

IV.   ARGUMENT ....................................................................................... 11

   A.   Plaintiff's Speculative Royalty Claim Fails as a Matter of
      Law............................................................................................. 11

      1.   Pacific Packaging Must Demonstrate a Reasonable
         Basis for a Royalty............................................................ 11

      2.   There Is No Reasonable Basis for a Royalty Here. .................. 13

   B.   Pacific Packaging May Not Seek Profits for Reverse
      Confusion. ................................................................................. 14

      1.   Pacific Packaging Claims Reverse Confusion. ........................ 14

      2.   Disgorgement of Profits Is Improper for Reverse
         Confusion. ........................................................................ 16

      3.   Trademark Law Does Not Entitle Plaintiff to a
         Windfall. ........................................................................... 18

      4.   Compensatory Profits Are Inappropriate for Reverse
         Confusion. ........................................................................ 19

   C.   The Evidence Does Not Support Allegations of Willful
      Infringement. ............................................................................ 21

   D.   Nutri/System IPHC No Longer Exists and Should be
      Dismissed. ................................................................................. 24

V.   CONCLUSION .................................................................................... 25

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Airhawk Int'l, LLC v. Ontel Prods. Corp.*,
No. 18-cv-00073-MMA-AGS, 2020 WL 2306440 (S.D. Cal. May
8, 2020).................................................................................................21, 22

*BDO Remit (USA), Inc. v. Stichting BDO*,
No. 11-cv-04054 MMM, 2012 WL 12895658
(C.D. Cal. Sep. 19, 2012) ............................................................................23

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................................................................................11

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
142 F.3d 1127 (9th Cir. 1998).............................................................*passim*

*Entrepreneur Media, Inc. v. Smith*,
279 F.3d 1135 (9th Cir. 2002).....................................................................23

*Lindy Pen Co. v. Bic Pen Corp.*,
982 F.2d 1400 (9th Cir. 1993).............................................................*passim*

*Lodestar Anstalt v. Bacardi & Co.*,
No. 2:16-cv-06411-CAS, 2019 WL 8105378
(C.D. Cal. July 3, 2019)..............................................................11, 12, 13

*M2 Software, Inc. v. Madacy Entm't*,
No. 00-cv-2853 AHM ..................................................................................12

*M2 Software Inc. v. Viacom Inc.*,
223 F. App'x 653 (9th Cir. 2007)...........................................................11, 12

*Maier Brewing Co. v. Fleischmann Distilling Corp.*,
390 F.2d 117 (9th Cir. 1968)........................................................................19

*Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*,
No. 14-cv-04853-PSG, 2015 WL 9028123
(N.D. Cal. Dec. 16, 2015)......................................................................16, 17

*One Indus., LLC v. Jim O'Neal Distrib., Inc.*,
578 F.3d 1154 (9th Cir. 2009)......................................................................22

*Playboy Enterprises, Inc. v. Baccarat Clothing Co.*,
692 F.2d 1272 (9th Cir. 1982)......................................................................18

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Quia Corp. v. Mattel, Inc.*,
   No. 10-cv-1902 JF (HRL), 2011 WL 2749576
   (N.D. Cal. July 14, 2011) ..............................................................*passim*

*Rich v. BAC Home Loans Servicing, LP*,
   No. 11-cv-00511-PHX-SRB, 2013 WL 10104610
   (D. Ariz. July 10, 2013)................................................................25

*Romag Fasteners, Inc v. Fossil, Inc.*,
   140 S. Ct. 1492 (2020) ...............................................17, 18, 21, 22

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*,
   944 F. Supp. 2d 830 (C.D. Cal. 2012)....................................17, 19

*Surfvivor Media, Inc. v. Survivor Prods.*,
   406 F.3d 625 (9th Cir. 2005)..........................................14, 15, 18, 19

*Trovan, Ltd. v. Pfizer, Inc.*,
   No. 98-cv-00094 LGB MCX, 2000 WL 709149
   (C.D. Cal. May 24, 2000) ............................................................12

**STATUTES AND RULES**

15 U.S.C. § 1117(a) ..............................................................17, 18

Fed. R. Civ. P. 56(a) ...................................................................10

FENWICK & WEST LLP
ATTORNEYS AT LAW

# I.     INTRODUCTION

This case is about the ubiquitous use of the phrase "fresh start."  Each new year, Nutrisystem, Inc. inspires its customers to get a fresh start on meeting their weight management goals through Nutrisystem's award-winning services and food. In 2019, Nutrisystem launched Nutrisystem FreshStart, a first week kick off program, with a meal kit and shake mixes unique for that diet year.  But Plaintiff, Pacific Packaging Concepts, Inc., a vitamin company, claims that it is the only one that can use the phrase "fresh start" to sell products.  Not so.  There are dozens of other companies already using a Fresh Start mark on food, beverages, vitamins, dietary supplements, and many other products.

Despite being one of the dozens of companies that use Fresh Start to sell its products, Pacific Packaging has pursued Nutrisystem in an attempt to extract a windfall from Nutrisystem and ride the coattails of Nutrisystem's success.  Pacific Packaging, a company with ███████████████████████████, brought eight different trademark claims against Nutrisystem and seeks disgorgement of profits from ██████████████████████████████████████████ ██████████████████████ among other damages claims.  Pacific Packaging continues to seek monetary relief ██████████████████████, even after Nutrisystem has stopped use of the Nutrisystem FreshStart mark and provided evidence of its good faith selection of the mark.  Pacific Packaging's attempt to use this litigation as a lottery ticket and extract a payment from Nutrisystem fails as a matter of law.

While Nutrisystem intends to vigorously defend itself against the fact-intensive infringement claims at trial, it moves for summary judgment now on four issues.

First, Pacific Packaging may not seek royalty damages for trademark infringement because there is no evidence of any market for a license, no history of it licensing a mark, and no intent to ever license its marks.  Second, disgorgement

FENWICK & WEST LLP
ATTORNEYS AT LAW

of profits is an inappropriate remedy for trademark infringement claims based on reverse confusion.  A reverse confusion theory acknowledges that Nutrisystem did not seek to trade on Pacific Packaging's claimed goodwill, and Nutrisystem's profits are thus not attributable to Pacific Packaging's goodwill.  Third, Pacific Packaging further cannot seek disgorgement of profits on its reverse confusion claim because Nutrisystem acted in good faith in selecting and using the Nutrisystem FreshStart mark.  And fourth, Nutri/System IPHC, Inc. ("IPHC") should be dismissed from this case because it has not existed since May 31, 2019 and Nutrisystem, Inc. assumed all of its assets and liabilities.  Nutrisystem moves the Court to narrow this case to the limited potential remedies and parties for Pacific Packaging's remaining claims.

## II.  BACKGROUND

### A.  Nutrisystem FreshStart

Nutrisystem has been a leader in the weight management industry since its founding in 1976.  Declaration of Jay Butt in support of Motion for Partial Summary Judgment ("Butt Decl.") ¶ 2.  For Nutrisystem, the beginning of each calendar year marks a new "diet season" with new products.  One of the new products for the 2019 diet season was Nutrisystem FreshStart.  *Id.*

For one year, in 2019, Nutrisystem sold a first week kick off program with a meal kit and shake mixes unique for that diet year under the Nutrisystem FreshStart mark.  *Id.* ¶¶ 3, 5.  The Nutrisystem FreshStart kits and shake mixes came in white and green packaging featuring both the well-known NUTRISYSTEM house mark and Nutrisystem's FreshStart mark.  *Id.* ¶ 4.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**Image 1: Nutrisystem FreshStart first week kit.  Butt Decl.¶ 4, Ex. 1.**



**Image 2: Nutrisystem FreshStart shake mix.  Butt Decl.¶ 4, Ex. 2.**



In addition to suing Nutrisystem, Inc., Pacific Packaging maintains this suit against the long-dissolved entity, Nutri/System IPHC, Inc.  In March 2019, Tivity Health, Inc. acquired Nutrisystem, Inc. and Nutri/System IPHC, Inc.  *Id.* ¶ 13, Ex. 8. Following the acquisition, as part of the corporate restructuring, Tivity dissolved the IPHC entity on May 31, 2019 and transferred all IPHC assets and liabilities to Nutrisystem, Inc.  *Id.* ¶ 15, Ex. 9.  IPHC did not exist at the time Pacific Packaging filed suit, yet Pacific Packaging continues to name IPHC as a defendant in this action. Nutrisystem, Inc. holds all relevant intellectual property interests previously held by IPHC.  *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW

**B.      Pacific Packaging Concepts, Inc.'s Vitamins**

Pacific Packaging Concepts Inc. sells vitamin and mineral supplement packets under the name "Fresh Start Vitamin Company."  Declaration of Eric Ball in support of Motion for Partial Summary Judgment ("Ball Decl.") ¶ 4, Ex. 1 (excerpted transcript of the Deposition of Aubrey "Bob" Cole ("Bob Dep. Tr.")) at 23:5–9.  Pacific Packaging has a line of Start-based themed vitamins with varying formulas, including Fresh Start, Great Start, and Super Start.  *Id.* at 28:1–7; Ball Decl. ¶ 19, Ex. 16 (image of Pacific Packaging's website).  These Start-themed vitamins come in single-use packets, stapled to cardboard, as well as boxes that contain larger quantities of single use packets.  Bob Dep. Tr. at 89:8–24, 91:5–92:3.

**Image 3: Fresh Start vitamin & mineral packet.  Ball Decl. ¶ 5, Ex. 2.**





Pacific Packaging is a small company whose annual sales ███████████ ███████████████████████.  *See* Ball Decl. ¶¶ 24–34, Exs. 21–30 (2010– 2019 tax returns); *see also infra* Table 1.  ███████████████████ ██████████████████████████████.  *See infra* Tables 1, 2 (data from tax returns).

Then, ████████████████████████████████████████ ████████  *See* Table 2; Bob Dep. Tr. at 249:16–250:9 (██████████████

FENWICK & WEST LLP
ATTORNEYS AT LAW

███); *cf.* Ball Decl. ¶¶ 24–33, Exs. 21–29 (2010–2018 tax returns).  This ███

occurred during the only year that Nutrisystem sold its Nutrisystem FreshStart

products: 2019.  *See* Butt Decl. ¶¶ 3, 5; *see also* Ball Decl. ¶ 7, Ex. 4 (excerpted

transcript of the Deposition of Cynthia "Cindy" Cole ("Cindy Dep. Tr.")) at 192:8–

14. ████████████████████████████████████████████████

███████████████████████████████████████.  Ball Decl. ¶ 35, Ex. 31

(California tax return January 2020–June 2020); Bob Dep. Tr. at 269:19–270:3;

Cindy Dep. Tr. at 180:15–20.  Pacific Packaging ███████████████, the only

year that Nutrisystem sold its Nutrisystem FreshStart products. ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████.  *See* Table 2.

**Table 1: Pacific Packaging Sales, Gross Profits, and Advertising 2010–2020**



| Year | Gross Receipts/Sales | Costs of Goods Sold | Gross Profits | Advertising Spend |
|------|----------------------|---------------------|---------------|-------------------|
| 2010 | ████ | ████ | ████ | █ |
| 2011 | ████ | ████ | ████ | █ |
| 2012 | ████ | ████ | ███ | ██ |
| 2013 | ████ | ████ | ███ | ██ |
| 2014 | ████ | ████ | ███ | █ |
| 2015 | ████ | ████ | ███ | ██ |
| 2016 | ████ | ████ | ███ | ██ |
| 2017 | ████ | ████ | ███ | ██ |
| 2018 | ████ | ████ | ███ | ██ |
| 2019 | ████ | ████ | ███ | ██ |
| 2020 (6-month total) | ███ | ██ | ██ | ███ |

**Table 2: Pacific Packaging Change in Annual Sales, 2015–2020**

| Year | Gross Receipts/Sales | Change from Previous Year |
|------|----------------------|---------------------------|
| 2015 | █████████            | ███████                   |
| 2016 | █████████            | ███████                   |
| 2017 | █████████            | ████████                  |
| 2018 | █████████            | ██████                    |
| 2019 | █████████            | ██████                    |
| 2020 | █████████            | ████████                  |

*(half year); **(projects 2020 full year from reported 2020 half year)

Pacific Packaging claims to hold rights to a federal trademark registration for Fresh Start in International Class 5 for dietary supplements containing multi-vitamins and minerals. Ball Decl. ¶ 21, Ex. 18. Pacific Packaging has never licensed any of its marks, including its Fresh Start mark. *Id*. ¶ 13, Ex. 10, (responding that Pacific Packaging "never assigned, licensed, or transferred its rights" in its Fresh Start mark); Bob Dep. Tr. at 155:20–156:16 ("No, we don't do any licensing"); *see* Statement of Uncontroverted Facts and Conclusions of Law ("SOUF") ¶ 22. As Founder and President Bob Cole stated, Pacific Packaging "never" intends to license any of its marks. Bob Dep. Tr. at 156:17–19. Pacific Packaging has also never appraised the value of its marks or company for any purposes related to licensing or acquisition. *Id*. at 275:16–23.

**C.   A Crowded Field of Fresh Start Marks**

For years, dozens of other companies have used a Fresh Start mark in a crowded field of Fresh Start and FreshStart marks for a variety of products—including for vitamins, food, and beverages. Butt Decl. ¶ 6, Ex. 3. Nutrisystem was aware of this crowded field when it launched Nutrisystem FreshStart in 2019. *Id*. ¶ 6. Nutrisystem chose to use a Fresh Start mark with the good faith belief that

FENWICK & WEST LLP
ATTORNEYS AT LAW

it would not cause confusion with any other marks in light of this crowded field. *See id.* And Nutrisystem has not seen any evidence of confusion—let alone appreciable evidence of confusion amongst a reasonable group of consumers. *Cf.* Ball Decl. ¶ 13, Ex. 10 (discovery response vaguely claiming confusion); *id.* ¶ 14, Ex. 11 (supplemental response unable to identify more than one customer's allegation of confusion). Nutrisystem also chose to display its Nutrisystem house mark with its FreshStart mark to further distinguish Nutrisystem FreshStart from the crowded field. *See* Butt Decl. ¶¶ 4, 6. With the well-known Nutrisystem brand, consumers would know that they were getting a product from Nutrisystem, and only Nutrisystem.

In November 2018, Nutrisystem filed two federal trademark applications for Fresh Start: one in International Class 29 for milk-based shakes and one in International Class 44 for weight management programs. *Id.* ¶ 7, Ex. 4, 5. In reviewing the applications, the USPTO did not find any likelihood of confusion with any of Pacific Packaging's registered marks. *Id.* ¶ 9. Following Nutrisystem's trademark application filings, two other companies contacted Nutrisystem regarding their use of a Fresh Start mark. *Id.* ¶ 12. Nutrisystem resolved these companies' concerns amicably. *Id.* Nutrisystem signed no-payment coexistence agreements with Fresh Start Gourmet, a company that sells *prepared foods* under its Fresh Start Gourmet mark, and Oregon Potato Company, which sells *smoothie drinks* under a Fresh Start mark. Butt Decl. ¶ 12, Exs. 6, 7. Neither agreement involved any payment, monetary settlement, license, or royalty. *Id.* ¶¶ 11, 12, Exs. 6, 7. Both companies explicitly acknowledged in the agreements that there was no likelihood of confusion between their and Nutrisystem's use of a Fresh Start mark. *See Id.* ¶ 12, Exs. 6, 7; Ball Decl. ¶ 11, Ex. 8 (excerpted transcript of the Deposition of Steven Schossberger of Oregon Potato Company ("Schossberger Dep. Tr.")) at 20:15–21 (discussing company research and conclusion that "there was no likelihood of confusion"). None of the other dozens of companies using a Fresh

Start mark reached out or contested Nutrisystem's use of the mark.  Butt Decl. ¶¶ 6, 12.  And the companies that signed agreements with Nutrisystem were not familiar with Pacific Packaging, let alone interested in paying them any royalty.  *See, e.g.,* Schossberger Dep. Tr. at 22:23–25.

Until this lawsuit, Pacific Packaging has not sought a licensing fee from any of the other dozens of companies using a FreshStart, Fresh Start, or any Fresh or Start-based mark.  Ball Decl. ¶ 13, Ex. 10; Bob Dep. Tr. at 155:20–156:16; *see* SOUF ¶ 22.  ███████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████████████.  Ball Decl. ¶ 36–42, Exs. 32–38; SOUF ¶¶ 31–38.  So, while Pacific Packaging now demands a royalty in this action, Pacific Packaging has no history of seeking or paying licensing fees or royalties for its marks, even for those within its own industry.  Ball Decl. ¶ 13, Ex. 10; Bob Dep. Tr. at 155:20–156:16; *see* SOUF ¶ 22.

### D.    This Dispute

On May 31, 2019, Pacific Packaging filed its Complaint against Nutrisystem, Inc. and Nutri/System IPHC, Inc. bringing eight claims for Nutrisystem's use of a Fresh Start mark: (1) federal trademark infringement; (2) counterfeit trademark infringement; (3) false designation of origin; (4) federal trademark dilution; (5) unfair competition under California state law; (6) false advertising under California state law; (7) unfair competition under California common law; and (8) trademark infringement under California common law.  Dkt. 1.  Pacific Packaging has since voluntarily dismissed the claims for counterfeit and trademark dilution, leaving six remaining claims.  *See* Dkt. 50.

Among its theories of trademark infringement, Pacific Packaging alleges reverse confusion.  The smaller company, with minimal revenues and brand recognition like Pacific Packaging here, that asserts trademark claims against a more well-known defendant is the classic reverse confusion case.  *See Dreamwerks*

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 n.5 (9th Cir. 1998) (recognizing reverse confusion claims in the Ninth Circuit). As part of this theory, Pacific Packaging claims a single instance of actual confusion based on a phone call with an individual customer, Christian Hauter. Ball Decl. ¶ 14, Ex. 11. In early 2019, Mr. Hauter saw a Nutrisystem FreshStart commercial on television, called Pacific Packaging to ask if Nutrisystem had acquired Pacific Packaging, and then resolved his question once he confirmed that he could still buy his vitamins from Pacific Packaging. Ball Decl. ¶ 9, Ex. 6 (excerpted transcript of the Deposition of Christian Hauter ("Hauter Dep. Tr.")) at 16:6–17:4; 68:4–69:9; Bob Dep. Tr. at 211:5–25. Despite Nutrisystem's significant sales and nationwide advertising, Pacific Packaging could not identify any other specific customers or instances to support its claim of actual confusion. Ball Decl. ¶ 13, Ex. 10 (discovery response vaguely asserting confusion); *cf.* Ball Decl. ¶ 14, Ex. 11 (supplemental response unable to identify any allegations of actual confusion other than Christian Hauter's).

   In his deposition, Bob Cole claimed that his goal in bringing the lawsuit was to "get Nutrisystem to stop using" a Fresh Start mark. Bob Dep. Tr. at 216:12–218:7. Nutrisystem stopped using the mark in December 2019. Butt Decl. ¶ 5. And yet, Pacific Packaging continues with its claims. Rather than stopping use, like most trademark cases, Pacific Packaging's true demand is a financial windfall. According to its disclosures, Pacific Packaging seeks to recover profits from ███████████ ████████████████████████████████████████████████████████████████, among other relief. Ball Decl. ¶ 12, Ex. 9 (disclosing damages claims).

   While Pacific Packaging attempts to extract its tax, Pacific Packaging has presented no evidence that it has suffered any monetary harm. It has no lost sales, no lost revenues, and no lost profits because of Nutrisystem. *See* Bob Dep. Tr. at 221:3–222:18 (admitting that Pacific Packaging does not have information on lost sales, does not know its sales figures, and has no documents showing certain sales

FENWICK & WEST LLP
ATTORNEYS AT LAW

figures); *id.* at 66:15–21 (responding that Pacific Packaging does not know of any impact on its business from Nutrisystem); *id.* at 276:6–17 (responding that Pacific Packaging does not know what damages it has suffered because of Nutrisystem); *see also* Ball Decl. ¶ 12, Ex. 9; Ball Decl. ¶ 15, Ex. 12; Ball Decl. ¶ 17, Ex. 14.

Pacific Packaging also cannot identify any changes it made (or had to make) in response to Nutrisystem.  Pacific Packaging did not make any changes to its mark, logo, or ▬▬▬ in response to Nutrisystem.  Bob Dep. Tr. at 40:20–22; Ball Decl. ¶ 5, Ex. 2 (excerpted transcript of the Deposition of Jonathan Cole ("Jonathan Dep. Tr.")) at 64:16–18; Ball Decl. ¶ 6, Ex. 3 (excerpted transcript of the Deposition of Jennifer Cole ("Jennifer Dep. Tr.")) at 145:24–146:8; SOUF ¶ 53.  Pacific Packaging did not change its advertisement or website in response to Nutrisystem. Bob Dep. Tr. at 120:7–9; Jonathan Dep. Tr. at 158:21–23; Jennifer Dep. Tr. at 204:5–13; SOUF ¶ 53.  Pacific Packaging did not alter any expansion plans in response to Nutrisystem.  Jonathan Dep. Tr. at 228:24–229:7; SOUF ¶ 53.   Pacific Packaging has not done *anything* differently in response to Nutrisystem and "wouldn't see why [they] would have to" run advertisements clarifying any confusion with Nutrisystem.  Jonathan Dep. Tr. at 196:10–12; *see id*. at 242:20–23 ("Like I said, no, we have not done anything different in response to Nutrisystem."); SOUF ¶¶ 52, 53.

Pacific Packaging seeks Nutrisystem's profits and a "reasonable royalty" not on the basis of actual loss or harm but on the basis of Nutrisystem's efforts and success unrelated to Pacific Packaging.

## III.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

2  **IV.    ARGUMENT**

3      **A.    Plaintiff's Speculative Royalty Claim Fails as a Matter of Law.**

4      Pacific Packaging seeks a royalty for Nutrisystem's use of a Fresh Start mark.

5  *See* Ball Decl. ¶ 12, Ex. 9.  Royalties are a form of a plaintiff's lost profits damages

6  based on "a calculation of the hypothetical licensing royalties that an infringer would

7  have paid to the senior owner of a mark."  *Lodestar Anstalt v. Bacardi & Co.*, No.

8  2:16-cv-06411-CAS (FFMx), 2019 WL 8105378, at *13 (C.D. Cal. July 3, 2019)

9  (citations omitted).

10      Here, Pacific Packaging's royalty claim is divorced from reality and purely

11  speculative.  First, Pacific Packaging has never licensed any of its marks and claims

12  it will "never" license any of its marks.  Bob Dep. Tr. at 155:20–156:19; SOUF ¶

13  22.  Second, Nutrisystem never paid and was never asked to pay any licensing or

14  royalty fee to any company in the crowded field of Fresh Start marks.  Butt Decl. ¶¶

15  6, 11, *id*. ¶ 6 Ex. 3.  Third, ████████████████████████████████

16  ████████████████████████████████████████████████████,

17  reflecting the lack of a market for royalties.  *See* Ball Decl. ¶¶ 36–42, Exs. 32–38;

18  SOUF ¶¶ 31–38; Butt Decl. ¶ 12, Exs. 6, 7.  There is no factual basis for Pacific

19  Packaging's royalty claim, and Ninth Circuit law rejects speculative damages

20  claims for royalties.  *See M2 Software Inc. v. Viacom Inc.*, 223 F. App'x 653, 655

21  (9th Cir. 2007) (denying a royalty award "[i]n the absence of a legitimate proposed

22  basis" for calculations).  Accordingly, Nutrisystem moves the Court to hold that

23  Pacific Packaging may not seek a royalty from Nutrisystem as a matter of law.

24      **1.    Pacific Packaging Must Demonstrate a Reasonable Basis for**

25        **a Royalty.**

26      Pacific Packaging bears the burden of proving "both the fact and the amount

27  of damage" with "reasonable certainty."  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d

28  1400, 1407 (9th Cir. 1993); *see also Quia Corp. v. Mattel, Inc.*, No. 10-cv-1902 JF

FENWICK & WEST LLP
ATTORNEYS AT LAW

(HRL), 2011 WL 2749576, at *6 (N.D. Cal. July 14, 2011) (denying an award of royalties where there is no history of licensing a mark).  The Ninth Circuit has declined to award a reasonable royalty where there is not a "legitimate proposed basis." *Viacom*, 223 F. App'x at 655.  A reasonable basis is most often a prior, existing licensing agreement or a history of licensing marks to third parties. *Lodestar*, No. 2019 WL 8105378, at *13 (denying royalties where licensing history is lacking) (citations omitted).  "Where a plaintiff has failed to present evidence of an intent to license its trademark, a reasonable royalty analysis necessarily is speculation." *Id.* (citing *Quia*, 2011 WL 2749576, at *6).

A plaintiff's "claim that it 'likely' would license its mark 'at some point in the future,' is insufficient as a matter of law to support a claim for lost profits in the form of a reasonable royalty."  *Quia*, 2011 WL 2749576, at *7; *M2 Software, Inc. v. Madacy Entm't*, No. 00-cv-2853 AHM (RZx), 2003 WL25667610, at *1 (C.D. Cal. Jan. 23, 2003) (denying royalties in a reverse confusion case where there was no evidence the plaintiff "was ever willing to license its mark to anyone"); *Trovan, Ltd. v. Pfizer, Inc.*, No. 98-cv-00094 LGB MCX, 2000 WL 709149, at *17–18 (C.D. Cal. May 24, 2000) (discussing legal principles requiring history of licensing negotiations to support royalty awards).

In *Quia*, the plaintiff's CEO testified that the plaintiff had no plans for licensing its product.  2011 WL 2749576, at *7.  Finding "no evidence of a prior license or licensing negotiations between the parties, a prior license or negotiations with respect to plaintiff's mark with a third party, or of a plan or timeline for licensing the mark," the court found plaintiff's reasonable royalty claim "insufficient as a matter of law."  *Id.*

Similarly, in *Lodestar*, the court rejected the royalty claim and granted summary judgment in favor of the defendant, Bacardi, who argued that there was no legitimate basis for a royalty claim. *Lodestar*, 2019 WL 8105378, at *13–15. Bacardi argued that (1) there were no prior licensing agreements between the

F ENWICK  &  W EST  LLP
A TTORNEYS  AT  L AW

parties, (2) Lodestar never licensed the mark at issue to third parties, and (3) there was no evidence that Bacardi sought licenses for marks to use in advertising and sales. *Id.* at *13. The court agreed with Bacardi, noting that "experts speculate as to the royalty rate the parties might have agreed to in a hypothetical negotiation," but that did not provide evidence of a reasonable basis for a royalty award. *Id.* at *14. The court further noted that even in the case law the plaintiff cited in its attempt to argue that a history of licensing is not required for royalty claims, *all successful royalty plaintiffs had a history* of third-party licenses or at least negotiations for such licenses. *Id.*

### 2.     There Is No Reasonable Basis for a Royalty Here.

As in *Quia* and *Lodestar*, Pacific Packaging's royalty claim here is speculative. Pacific Packaging has never licensed its Fresh Start mark before—indeed it has never licensed *any* of its marks before. Ball Decl. ¶ 13, Ex. 10 (responding that Pacific Packaging "never assigned, licensed, or transferred its rights" in its Fresh Start mark); Bob Dep. Tr. at 155:20–156:16 ("No, we don't do any licensing"); *see* SOUF ¶ 22. Pacific Packaging's Founder and President emphatically stated that Pacific Packaging would "never" license Pacific Packaging's trademarks to anyone. Bob Dep. Tr. at 156: 17–19. Prior to this lawsuit, Pacific Packaging has never assessed the value of its marks or business for any licensing or acquisition. *See* Bob Dep. Tr. at 275:16–23. Nor did Nutrisystem seek a license for its Nutrisystem FreshStart mark, and none of the dozens of other companies in the crowded field of Fresh Start marks contacted Nutrisystem about any licensing fees. Butt Decl. ¶ 11. The only basis for any proposed royalty in this case comes from the hypothetical and speculative opinions of Pacific Packaging's expert about what other companies have purportedly used—divorced from the facts of Pacific Packaging's stated intent and the use of their marks. *See* Bob Dep. Tr. at 275:16–276:4 (acknowledging no analysis before this lawsuit). Pacific Packaging's expert's proposals do not create a factual dispute. *See Lodestar*, 2019 WL

FENWICK & WEST LLP
ATTORNEYS AT LAW

8105378, at *14 (rejecting Lodestar's expert's "hypothetical" basis for royalties as a cure for plaintiff's "failure to provide any evidence of a prior license or negotiations").

From both companies' experiences, there does not appear to be a market for royalties for Start-based trademarks in either Pacific Packaging's vitamin space or Nutrisystem's food or beverage space. ████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████████████████. Ball Decl. ¶¶ 36–42, Exs. 32–38; SOUF ¶¶ 31–38. Nutrisystem has entered into two no-payment coexistence agreements with food and beverage companies using a Fresh Start mark: Fresh Start Gourmet for its prepared foods, and Oregon Potato Company for its Fresh Start smoothies. Butt Decl. ¶ 12, Exs. 6, 7; *see* Schossberger Dep. Tr. at 19:20–20:3. In light of the parties' lack of licensing histories, the crowded field, and the market reality, Pacific Packaging has not and cannot show a reasonable basis for a royalty claim against Nutrisystem in this case.

Nutrisystem moves the Court to dismiss Pacific Packaging's unsupported and entirely speculative claim for royalties.

### B. Pacific Packaging May Not Seek Profits for Reverse Confusion.

#### 1. Pacific Packaging Claims Reverse Confusion.

The Ninth Circuit recognizes two different theories for trademark infringement: forward confusion and reverse confusion. *Dreamwerks*, 142 F.3d at 1130 n.5 (recognizing reverse confusion claims in the Ninth Circuit). Forward confusion is the classic trademark infringement theory and occurs when "consumers believe that goods bearing the junior mark," here, allegedly Nutrisystem FreshStart, "came from, or were sponsored by, the senior mark holder," here, allegedly Pacific Packaging. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). "Reverse confusion occurs when consumers dealing with the senior mark

FENWICK & WEST LLP
ATTORNEYS AT LAW

holder," Pacific Packaging, "believe that they are doing business with the junior one," Nutrisystem. *Id.* Reverse confusion involves lower profile plaintiffs suing more prominent companies. *See Dreamwerks*, 142 F.3d at 1130. In the reverse confusion context, the confusion affects the plaintiff's sales or reputation, rather than the defendant's. *See id.* at 1129.

For example, in *Surfvivor Media*, a Hawaiian-themed surf apparel company sued the production company behind the popular reality television show "Survivor" for trademark infringement under a reverse confusion theory. *Surfvivor Media*, 406 F.3d at 628–29. Surfvivor held trademark registrations for its name and logo for use on beach apparel and products. *See id.* Surfvivor alleged that the famous show's merchandise featuring its island-themed logo would likely confuse the public that the surf apparel company was sponsored by the show. *See id.* Surfvivor based this on the actual confusion of a single customer and single retailer. *See id.* at 633. The Ninth Circuit affirmed summary judgment in favor of the defendant, finding "scant evidence" of actual confusion and no evidence supporting that the goods came from the same source. *See id.* at 633–34.

Here, one of Pacific Packaging's theories is reverse confusion. Pacific Packaging, █████████████████████████████████████████ compared to Pacific Packaging's claims against ███████████████████ ████████ reflects the typical reverse confusion plaintiff. *See Dreamwerks*, 142 F.3d at 1130; *see also* Ball Decl. ¶ 34, Ex. 30; Ball Decl. ¶ 12, Ex. 9. Pacific Packaging is the low-profile company suing the more famous brand. *See Dreamwerks*, 142 F.3d at 1130. Further, Pacific Packaging's claimed evidence of actual confusion alleges reverse confusion. Pacific Packaging claims that it brought this lawsuit after one customer, Christian Hauter, saw a Nutrisystem FreshStart commercial and asked Pacific Packaging if it had been acquired by Nutrisystem. Hauter Dep. Tr. at 16:6–17:4. This was the only customer Pacific Packaging was able to identify who reached out regarding Nutrisystem. Ball Decl. ¶ 14, Ex. 11 (supplemental

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   interrogatory response unable to identify more than one customer's allegation of

2   confusion).  Once Mr. Hauter confirmed with Pacific Packaging that he could still

3   buy his vitamins from Pacific Packaging, he ended his inquiry.  Hauter Dep. Tr. at

4   16:6–17:4, 68:4–69:9; *see* Bob Dep. Tr. at 211:5–25.

5        Even assuming Pacific Packaging proves liability for reverse confusion, it

6   cannot seek disgorgement of Nutrisystem's profits as a remedy for a reverse

7   confusion claim as a matter of law for three independent reasons.[1]  First, the

8   disgorgement of profits Pacific Packaging seeks is improper in the reverse

9   confusion context.  Second, plaintiffs in trademark cases are not entitled to the

10  "windfall" that Pacific Packaging seeks here.  Third, Pacific Packaging has no

11  evidence of lost sales, so it is not entitled to disgorgement of Nutrisystem's profits

12  under an alternative compensatory damages theory.  Nutrisystem moves the Court

13  to grant summary judgment and dismiss Pacific Packaging's claims for

14  Nutrisystem's profits under a reverse confusion theory.

15        **2.     Disgorgement of Profits Is Improper for Reverse Confusion.**

16        Pacific Packaging seeks disgorgement of Nutrisystem's profits under an

17  unjust enrichment theory, but such an award is an improper remedy for reverse

18  confusion.  Awarding profits for unjust enrichment in a trademark case "is proper

19  only where the defendant is attempting to gain the value of an established name of

20  another."  *Lindy Pen*, 982 F.2d at 1406 (internal quotations omitted).  It is therefore

21  an improper remedy for reverse confusion.

22        In a reverse confusion case, the accused infringer "does not seek to trade on

23  the good will and name of the senior user; instead he overwhelms it."  *Novadaq*

24  *Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, No. 14-cv-04853-PSG, 2015 WL

25  9028123, at *2 (N.D. Cal. Dec. 16, 2015) (citations and quotation marks omitted).

26  "An intent to exploit an existing mark 'is necessarily absent in a reverse confusion

27  case.'"  *Id.* at *2 (holding that profits are not an available remedy for a reverse

28  [1] Nutrisystem will contest this liability claim at trial.

FENWICK & WEST LLP
ATTORNEYS AT LAW

confusion case). In *Lindy Pen*, the Ninth Circuit held that an award of profits was inappropriate as a matter of law where the defendant had no intent to capitalize on the plaintiff's name. 982 F.2d 1407.[2] The *Lindy Pen* court discussed how it was clear that the prominent defendant was not trading on the name of the "relatively obscure" plaintiff. *Id.* Without evidence that the defendant intended to trade on the plaintiff's established name, a plaintiff cannot show the defendant recovered ill-gotten gains that would justify an unjust enrichment remedy. *See Spin Master*, 944 F. Supp. 2d at 849 (holding that disgorgement was inappropriate as a matter of law even when the defendant willfully blocked the plaintiff's expansion in the market because there was no evidence that the defendant traded on the plaintiff's name). Without ill-gotten gains, an award of profits would be a punishment rather than compensation, which is contrary to the purposes of the remedy. 15 U.S.C. § 1117(a) (profits "shall constitute compensation and not a penalty").[3]

In sum, the disgorgement of profits for unjust enrichment is an inappropriate remedy for reverse confusion cases where as here, Nutrisystem as the more successful and prominent party, does not capitalize on the plaintiff's mark and received no goodwill from the plaintiff. This is because reverse confusion looks at the effects on the plaintiff's sales, so the defendant's profits are irrelevant. Nutrisystem moves the Court to preclude Pacific Packaging from recovering Nutrisystem's profits as a matter of law under any reverse confusion theory.

---

[2] The Ninth Circuit did not formally recognize reverse confusion until five years after deciding *Lindy Pen*. *See Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp. 2d 830, 848 n.17 (C.D. Cal. 2012) (discussing *Lindy Pen* and *Dreamwerks*).

[3] Recently, the U.S. Supreme Court held that "a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020). "[I]t is a principle long reflected in equity practice where district courts have often considered a defendant's mental state, among other factors, when exercising their discretion in choosing a fitting remedy." *Id.* Pre-*Romag* Ninth Circuit law therefore remains instructive where it weighs and assesses mental state in its analysis on whether there should be any award of disgorgement of profits. *See id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW

### 3.    Trademark Law Does Not Entitle Plaintiff to a Windfall.

Nutrisystem's profits are an inappropriate remedy in this case for the additional reason that trademark plaintiffs are not entitled to a windfall.  A profits remedy under an unjust enrichment theory aims to make infringement unprofitable.  *Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274 (9th Cir. 1982).  But that does not mean it should make litigation profitable.  When awarding profits, the Ninth Circuit advises that the "Plaintiff is not . . . entitled to a windfall." *Lindy Pen*, 982 F.2d at 1405 (ellipses in original).  And the Lanham Act provides that an award of profits "shall constitute compensation and not a penalty."  15 U.S.C. § 1117(a).

*Romag* further clarified how equitable principles direct courts to weigh the defendant's mental state in "choosing a *fitting* remedy."  *See Romag*, 140 S. Ct. at 1497 (emphasis added).  Where there is reverse confusion, the plaintiff's sales or reputation are affected by the infringement, not the defendant's.  *See Dreamwerks*, 142 F.3d at 1129 (recognizing reverse confusion when the long-running Dreamwerks Star Trek convention became associated with the newer DreamWorks movie studio).  A profits award is therefore an improper remedy for reverse confusion.  It is an inappropriate "windfall" untethered to how the defendant earned those profits and a "penalty" rather than "compensation." *See Lindy Pen*, 982 F.2d at 1405, 1407 (citing 15 U.S.C. § 1117(a)).  Similar to the *Lindy Pen* and *Surfvivor* cases, Nutrisystem is a leader in its industry and cannot be said to trade on the "relatively obscure" Plaintiff's mark.  *See Lindy Pen*, 982 F.2d at 1407 (discussing lack of willful infringement by defendant Bic Pen Corp.).

A profits award is even more inappropriate—and less aligned with equitable principles—when the remedy sought far exceeds the value of the plaintiff's business.  "There is something basically unseemly and grossly uneconomical in an award to a small company of an amount of money several times its net worth to use to resuscitate an infringed trademark.  When such an award is many times the value of the trademark property, then it appears that plaintiff has received a windfall, not

FENWICK & WEST LLP
ATTORNEYS AT LAW

compensation."  5 McCarthy on Trademarks and Unfair Competition § 30:84 (5th ed.).  Pacific Packaging is a small company with ████████████ ████████████████████████, yet it seeks disgorgement of profits for a claimed ████████████████████████ for the one year it sold Nutrisystem FreshStart. Ball Decl. ¶¶ 24–34, Exs. 21–30 (2010–2019 tax returns); Ball Decl. ¶ 12, Ex. 9.  In total, Pacific Packaging is seeking an award more than ███ times its annual gross profits.  *See id.*  The profits remedy that Pacific Packaging seeks in no way fits the claim alleged.  Pacific Packaging's attempt to extract a penalty from Nutrisystem should be denied as a matter of law.

### 4.    Compensatory Profits Are Inappropriate for Reverse Confusion.

An award of profits is also not a proper compensatory remedy for reverse confusion.  The compensatory approach awards defendant's profits as a proxy for plaintiff's lost profits.  *Spin Master*, 944 F. Supp. 2d at 840 (citing *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 121 (9th Cir. 1968)).  This theory, which applies to direct competitors, assumes that the defendant's profits arise from infringing activities that divert sales from the plaintiff.  *See id.*  But sales are not diverted to the defendant in reverse confusion.  Rather, consumers are allegedly confused encountering the smaller plaintiff's goods and assuming an affiliation with the larger defendant.  *See Surfvivor Media*, 406 F.3d at 630.  "[A]n award of the defendant's profits is inappropriate in cases of reverse confusion, where the junior user's profits are likely to exceed the senior user's diverted sales."  *Quia*, 2011 WL 2749576, at *7.  Due to the nature of reverse confusion, an award of profits is an improper remedy for claims under a compensatory, lost profits theory. *Id.*

In this reverse confusion case, Pacific Packaging has no evidence of lost profits and has no valid claim to profits as a compensatory remedy.  Pacific Packaging has not produced any evidence supporting lost sales.  *See* Bob Dep. Tr. at

FENWICK & WEST LLP
ATTORNEYS AT LAW

221:3–222:18 (admitting that Pacific Packaging has no documents showing sales figures); Ball Decl. ¶ 15, Ex. 12; Ball Decl. ¶ 17, Ex. 14.  Nor has it produced evidence supporting lost revenue.  *See* Ball Decl. ¶ 15, Ex. 12; Ball Decl. ¶ 17, Ex. 14; *see also* Jennifer Dep. Tr. at 216:3–15; Cindy Dep. Tr. at 193:10–14.  In his deposition, Pacific Packaging's Founder and President could not point to any factual evidence of lost sales, revenues, or profits.  *See* Bob Dep. Tr. at 221:3–222:18; *id*. at 66:15–21 (responding that Pacific Packaging does not know of any impact on its business from Nutrisystem); *id.* at 276:6–17 (responding that Pacific Packaging does not know what damages it has suffered because of Nutrisystem).

Instead, Pacific Packaging's tax returns reflect the reality: ███████████████ ██████████████████████████████████████████████████████████  ██████████████████████████████████████  *See* Ball Decl. ¶¶ 24–33, Exs. 21–29 (2010–2018 tax returns); *see also* Tables 1, 2.  ██████████████████ ███████████████████████████████████████  *See* Ball Decl. ¶¶ 24–34, Exs. 21–30 (2010–2019 tax returns); *see also* Tables 1, 2.  ██████████████████ ██████████████████████████████████████████████████████████████████  ██████████████████████████████████████████████████████  *See* Table 2; Bob Dep. Tr. at 249:16–250:9 (██████████████████████████████████).  2019 was also the only year Nutrisystem sold Nutrisystem FreshStart.  Butt Decl. ¶¶ 3, 5; *see also* Cindy Dep. Tr. at 192:8–14.  There is no dispute of fact about the revenue totals on Pacific Packaging's tax returns.  Together, ██████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████.

Further, Pacific Packaging cannot point to any losses or costs resulting from changes made in response to Nutrisystem.  Pacific Packaging made no changes in response to Nutrisystem's use of a Fresh Start mark.  Pacific Packaging did not make any changes to its mark, logo, or packaging because of Nutrisystem.  Bob

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   Dep. Tr. at 40:20–22; Jonathan Dep. Tr. at 64:16–18; Jennifer Dep. Tr. at 145:24–

2   146:8; SOUF ¶ 53.  Pacific Packaging did not change its advertising strategies,

3   advertising content, or website in response to Nutrisystem.  Bob Dep. Tr. at 120:7–

4   9; Jonathan Dep. Tr. at 158:21–23; Jennifer Dep. Tr. at 204:5–13; SOUF ¶ 53.

5   Pacific Packaging did not alter any expansion plans in response to Nutrisystem.

6   Jonathan Dep. Tr. at 228:24–229:7; SOUF ¶ 53.  When asked about running any

7   corrective advertising in response to Nutrisystem, Jonathan Cole remarked, "I

8   wouldn't see why we would have to."  Jonathan Dep. Tr. at 196:10–12; *see also id*.

9   at 242:20–23 ("Like I said, no, we have not done anything different in response to

10  Nutrisystem."); SOUF ¶¶ 52, 53.  Pacific Packaging has not presented evidence of

11  any changes to its activities or business in response to Nutrisystem.

12      Accordingly, Nutrisystem moves for partial summary judgment that a

13  compensatory profits award is not an available remedy for the reverse confusion

14  claim in this case.  *See Quia*, 2011 WL 2749576, at *7 (rejecting the proxy theory

15  and noting that "an award of the defendant's profits is inappropriate in cases of

16  reverse confusion, where the junior user's profits are likely to exceed the senior

17  user's diverted sales").

18      **C.      The Evidence Does Not Support Allegations of Willful**

19              **Infringement.**

20      While not necessary to support summary judgment on the question of

21  disgorgement for reverse confusion, Pacific Packaging cannot claim Nutrisystem's

22  profits for the additional reason that willfulness is lacking in this case.  As the

23  Supreme Court recently held, a defendant's mental state remains "highly relevant"

24  to determining the fitting remedy in a trademark infringement case.  *Romag*, 140 S.

25  Ct. at 1497.  Disgorgement of profits is generally an appropriate remedy only where

26  the defendant engaged in intentional wrongdoing.  *Airhawk Int'l, LLC v. Ontel*

27  *Prods. Corp*., No. 18-cv-00073-MMA-AGS, 2020 WL 2306440, at *5 (S.D. Cal.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

May 8, 2020).  As a matter of law, Nutrisystem did not willfully infringe Pacific Packaging's mark.

Applying the new *Romag* standard, another district court in this Circuit denied a motion for reconsideration of summary judgment of no disgorgement. *Airhawk,* 2020 WL 2306440, at *1.  Exercising its "discretionary and equitable authority" on disgorgement of profits as instructed by *Romag*, the court weighed the defendant's mental state as "a highly important consideration." *Id.* at *4.  The court found it "especially appropriate" to consider willfulness because the plaintiff's damages theory was "as a restitutionary measure of damages." *Id.* at *5.  That is Pacific Packaging's theory here.  *See* Ball Decl. ¶ 12, Ex. 9 (disclosing damages claims).  In these cases, the plaintiffs "seek disgorgement of profits not necessarily to be made whole, but to prevent the defendant from retaining gains made possible by its wrongdoing." *Airhawk,* 2020 WL 2306440, at *5 (citation omitted).  The *Airhawk* court thus denied reconsideration, finding that its pre-*Romag* grant of summary judgment remained correct when applying the post-*Romag* framework. *Id.*

There is no genuine dispute of the facts surrounding Nutrisystem's adoption and use of the Nutrisystem FreshStart mark.  Nutrisystem was aware of a crowded field of dozens of other FreshStart, Fresh Start, and Fresh marks and made the good faith decision to use the mark in light of this crowded field.  Butt Decl. ¶ 6, Ex. 3.  Nutrisystem was aware that Pacific Packaging's vitamin company claimed use of a Fresh Start mark. *Id.*  Nutrisystem was also aware that many other companies used a Fresh Start mark for foods, beverages, beauty products, and more. *See id.*  Even still, knowledge alone is not willful infringement. *See Lindy Pen*, 982 F.2d at 1406 (no willful infringement where defendant's knowledge of plaintiff's mark was "attenuated," plaintiff's mark was weak, and there was no evidence of actual confusion); *see also One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164 (9th Cir. 2009) ("In a crowded field of similar marks, each member of the

FENWICK & WEST LLP
ATTORNEYS AT LAW

crowd is relatively weak in its ability to prevent use by others in the crowd."); *BDO Remit (USA), Inc. v. Stichting BDO*, No. 11-cv-04054 MMM (CWx), 2012 WL 12895658, at *28 (C.D. Cal. Sep. 19, 2012) ("[P]rior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith and may be consistent with good faith . . . ."). Nutrisystem also chose to use its house mark, NUTRISYSTEM, with its FreshStart mark to further distinguish itself from the crowd. *See* Butt Decl. ¶¶ 4, 6.

The lack of actual or a likelihood of confusion here reinforces that Nutrisystem acted in good faith. First, the USPTO reinforced Nutrisystem's good faith when it did not find any likelihood of confusion between Nutrisystem's Fresh Start trademark application and Pacific Packaging's registered marks. *Id*. ¶ 9. Second, when two other companies reached out, after the USPTO approved Nutrisystem's trademark application for publication, Nutrisystem amicably resolved their concerns with no-payment coexistence agreements. *Id*. at ¶¶ 8, 12, Exs. 6, 7; Schossberger Dep. Tr. at 17:10–18:5. The parties all agreed they could peacefully coexist and continue to use their FreshStart or Fresh Start marks. *See* Butt Decl. ¶ 12, Exs. 6, 7. The parties agreed that there was no likelihood of confusion, in light of the crowded field. *See id.*; *see also* Schossberger Dep. Tr. at 19:20–20:3, 20:15–21. And third, there has been no meaningful evidence of confusion between Pacific Packaging and Nutrisystem's mark. *See* Ball Decl. ¶ 14, Ex. 11 (claiming only a single person's alleged confusion). Trademark law requires Pacific Packaging to show confusion among an "appreciable number" of reasonable consumers. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002). One person in the context of millions of sales is not enough.

Finally, Nutrisystem was not aware of Pacific Packaging's dispute over its Fresh Start mark until Pacific Packaging filed this lawsuit in May 2019—months after Nutrisystem had been using the Nutrisystem FreshStart mark. Butt Decl. ¶ 10. Pacific Packaging sent its first demand letter to Nutrisystem after it filed the

FENWICK & WEST LLP
ATTORNEYS AT LAW

Complaint and attached the Complaint as an exhibit.  Ball Decl. ¶ 23, Ex. 20.
Pacific Packaging did not contact Nutrisystem following the November 2018
federal trademark application filings or try to prevent the launch of the product.
*See* Butt Decl. ¶ 10.  Rather, it filed its opposition to Nutrisystem's trademark
application in October 2019, after filing this litigation.  *See* Ball Decl. ¶ 22, Ex. 19.

Against these undisputed facts, Pacific Packaging interprets willfulness where
there is none—based on its agreement with an unrelated entity.  In 2014, Pacific
Packaging entered into an agreement with Healthways WholeHealth Living.  Ball
Decl. ¶ 43, Ex. 39.  WholeHealth Living is and was a program run through the
Healthcare subdivision of Tivity Health, Inc.  *See* Butt Decl. ¶ 13, Ex. 8.  Five years
later, in March 2019, Tivity acquired Nutrisystem.  *See id.*  Tivity ran Nutrisystem
out its separate Nutrition subdivision.  *See id.*  Nutrisystem does not dispute that
Pacific Packaging entered an agreement in 2014 with Healthways WholeHealth
Networks.  But at that time in 2014, and for years after, Healthways WholeHealth
Living, and Tivity, were separate entities from Nutrisystem.  Even more, Nutrisystem
had launched Nutrisystem FreshStart before the Tivity acquisition.  *Id.* ¶ 14.  Tivity
played no role in the selection or launch of Nutrisystem FreshStart.  *See id.*

The undisputed facts cannot support Pacific Packaging's allegations of
willful infringement as a matter of law.  For this additional reason, and for the
reasons above, Pacific Packaging's claim for disgorgement of profits fails for its
reverse confusion claim as a matter of law.

**D.  Nutri/System IPHC No Longer Exists and Should be Dismissed.**

Nutri/System IPHC was dissolved on May 31, 2019—before Pacific
Packaging even filed this litigation.  Tivity dissolved IPHC as part of a broader
corporate restructuring following Tivity's acquisition of Nutrisystem.  *Id.* ¶ 15.
And as part of that dissolution, IPHC transferred all its assets and liabilities to
Nutrisystem, Inc.  *Id.* ¶ 15, Ex. 9.  Pacific Packaging cannot dispute these facts.  If
Pacific Packaging has any valid claims in this matter, those claims may proceed

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    solely against Nutrisystem, Inc. now that the entities have merged.  *See, e.g.*, *Rich*
2    *v. BAC Home Loans Servicing, LP*, No. 11-cv-00511-PHX-SRB, 2013 WL
3    10104610, at *1 n.2 (D. Ariz. July 10, 2013) (permitting a case to proceed against a
4    single entity because "the two entities have merged and [defendant] is now liable
5    for all actions").

6         Nutrisystem informed Pacific Packaging that it dissolved IPHC back in 2019,
7    during the parties' original Rule 26(f) discovery conference.  Ball Decl. ¶ 3.  And
8    yet, Pacific Packaging has refused to dismiss IPHC from the case.  Nutrisystem
9    moves the Court to end Pacific Packaging's wasteful and burdensome duplication
10   of claims and parties by dismissing Nutri/System IPHC from this case.

11   **V.     CONCLUSION**

12        Pacific Packaging seeks damages remedies unavailable as a matter of law.  A
13   plaintiff is not entitled to claim "reasonable royalties" in a lawsuit when it has
14   never—and proclaims it would never—seek licensing deals for its marks in the
15   course of business.  And disgorgement of profits is an improper remedy for reverse
16   confusion.  Trademark remedies should not provide a plaintiff with a windfall
17   untethered to the realities of the case, especially when there is no evidence of
18   willfulness.  Here, Pacific Packaging seeks a windfall from Nutrisystem's success.
19   Finally, a dissolved entity whose assets and liabilities have been fully assumed by
20   another named defendant should not remain a party to a case.  Accordingly, the Court
21   should grant Nutrisystem's motion and enter partial summary judgment in its favor.

22

23   Dated:  January 15, 2021                    FENWICK & WEST LLP

24

25                                               By: */s/ Eric J. Ball*

26                                                    Eric J. Ball

27                                               Counsel for Defendants
                                                 NUTRISYSTEM, INC. and
28                                               NUTRI/SYSTEM IPHC

FENWICK & WEST LLP
ATTORNEYS AT LAW