ERIC BALL (CSB No. 241327)
eball@fenwick.com
MEGHAN E. FENZEL (CSB No. 324139)
mfenzel@fenwick.com
LAUREN E. BORDER (CSB No. 327770)
lborder@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:  650.938.5200

SAPNA S. MEHTA (CSB No. 288238)
smehta@fenwick.com
JANIE Y. MILLER (CSB No. 312715)
jmiller@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:  415.875.2300
Facsimile:  415.281.1350

Attorneys for Defendants
NUTRISYSTEM, INC. and
NUTRI/SYSTEM IPHC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PACIFIC PACKAGING CONCEPTS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NUTRISYSTEM, INC., a Delaware corporation; NUTRI/SYSTEM IPHC, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:19-cv-04755-ODW(Ex)<br><br>**NUTRISYSTEM'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF NUTRISYSTEM'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]**<br><br>Hearing:  February 22, 2021<br>Time:  1:30 p.m.<br>Ctrm:  5D, 5th Floor<br>Judge:  Hon. Otis D. Wright II<br><br>Trial Date: April 20, 2021 |

FENWICK & WEST LLP
ATTORNEYS AT LAW

Pursuant to Civil Local Rule 56-1 and this Court's Scheduling and Case Management Order, Dkt. 27, Defendants Nutrisystem, Inc. and Nutri/System IPHC submit the following statement of uncontroverted facts and conclusions of law as to which there is no genuine issue or dispute in support of its Motion for Partial Summary Judgment:

## I.    STATEMENT OF UNCONTROVERTED FACTS

| UNCONTROVERTED FACTS | EVIDENCE ESTABLISHING UNCONTROVERTED FACTS |
|---|---|
| **Nutrisystem sold Nutrisystem FreshStart for one year.** | |
| 1.  Nutrisystem has sold weight management goods and services under its Nutrisystem mark since 1976. | Declaration of Jay Butt in support of Nutrisystem's Motion for Partial Summary Judgment ("Butt Decl.") ¶ 2. |
| 2.  Nutrisystem launched Nutrisystem FreshStart, which included a first week kick off program with a meal kit and shake mixes, in December 2018. | Butt Decl. ¶ 3. |
| 3.  Nutrisystem sold Nutrisystem FreshStart for one year: December 2018 to December 2019. | *See* Butt Decl. ¶¶ 3, 5; *See* Declaration of Eric Ball in support of Nutrisystem's Motion for Partial Summary Judgment ("Ball Decl.") ¶ 7, Ex. 4, excerpted Transcript of the Deposition of Cynthia "Cindy" Cole ("Cindy Dep. Tr."), at 192:8–14. |
| 4.  Nutrisystem stopped selling its Nutrisystem FreshStart mark at the end of 2019. | Butt Decl. ¶ 5; Ball Decl. ¶ 4, Ex. 1, excerpted Transcript of the Deposition of Aubrey "Bob" Cole ("Bob Dep. Tr.") at 216:12–218:7 |

FENWICK & WEST LLP
ATTORNEYS AT LAW

| UNCONTROVERTED FACTS | EVIDENCE ESTABLISHING UNCONTROVERTED FACTS |
|---|---|
| | (discussing how Pacific Packaging's goal in bringing this lawsuit was to stop Nutrisystem using the mark but then acknowledging that Pacific Packaging has continued the lawsuit after Nutrisystem ceased use of its Nutrisystem FreshStart mark). |
| 5.   The following is an image of the packaging for the Nutrisystem FreshStart first week meal kit:  | Butt Decl. ¶ 4, Ex. 1. |

FENWICK & WEST LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| 6. | The following is an image of the packaging for the Nutrisystem FreshStart shake mix:  | Butt Decl. ¶ 4, Ex. 2. |

| **Pacific Packaging sells vitamins under the name Fresh Start Vitamin Company.** | |
|---|---|

| | | |
|---|---|---|
| 7. | Pacific Packaging sells vitamins and mineral supplements under the name Fresh Start Vitamin Company. | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 23:5–9 ("[E]verything is vitamins that we sell. Pacific Packaging is the same as Fresh Start Vitamin Company."). |
| 8. | Pacific Packaging sells a line of Start-based vitamin varietals: Great Start, Daily Start, Fresh Start, Ultra Start, Omega Start, Total Start, Super Start, Heart Start, Supreme Start, and Power Start. | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 28:1–7; Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 32:4–15; Ball Decl. ¶ 19, Ex. 16, Exhibit 102 of Bob Dep. Tr., NUTRISYSTEM00025799 (image of Pacific Packaging's website). |

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

| | |
|---|---|
| 9.  The following is an image of Pacific Packaging's vitamin packaging for its "Fresh Start" vitamin and mineral packets:   | Ball Decl. ¶ 5, Ex. 2, Exhibit 107 of Transcript of the Deposition of Jonathan Cole("Jonathan Dep. Tr."); <br><br> Ball Decl. ¶ 20, Ex. 17, NUTRISYSTEM00025801, (image of Fresh Start vitamin and mineral packet). |
| 10.  Pacific Packaging sells vitamins in single-use packets as well as boxes that contain larger quantities of packets. | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 89:8–24 (discussing packaging); <br><br> Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 91:5–92:3; <br><br> *See* Ball Decl. ¶ 19, Ex. 16, Exhibit 102 of Bob Dep. Tr., NUTRISYSTEM00025799 (image of Pacific Packaging's website). |
| 11.  Pacific Packaging claims rights to a federal trademark registration for Fresh Start in International Class 5 for dietary supplements containing multi-vitamins and minerals. | Ball Decl. ¶ 21, Ex. 18, NUTRISYSTEM00000298 (Trademark Electronic Search System record for U.S. Trademark Registration No. 2463131 for Pacific Packaging claimed Fresh Start mark'). |

| **Pacific Packaging is a small company whose** ███████████████████ | |
| :--- | :--- |
| ███████████████████████ **.** | |
| 12.   Pacific Packaging's sales ███████ ██████████████████████. | Ball Decl. ¶¶ 24–33, Exs. 21–29, PPC0004669–77 (U.S. Income Tax Return for Pacific Packaging for 2010–2018);<br><br>Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 66:3–21 (███████████ ██████████████████ ;<br><br>*See also* Ball Decl. ¶ 16, Ex. 13, Plaintiff's Responses to Defendant's Fifth Set of Interrogatories, No. 20 (sales 2016–2019);<br><br>*See also* Tables 1 and 2 in Memorandum. |
| 13.   Pacific Packaging's sales ██████ ██████████████. | Ball Decl. ¶ 16, Ex. 13, Plaintiff's Responses to Defendant's Fifth Set of Interrogatories, No. 20;<br><br>Ball Decl. ¶¶ 24–34, Exs. 21–30, PPC0004669–78 (U.S. Income Tax Return for Pacific Packaging for 2010–2019);<br><br>*See also* Table 1 in Memorandum. |
| 14.   Pacific Packaging's sales ██████ ██████████. | Ball Decl. ¶ 16, Ex. 13, Plaintiff's Responses to Defendant's Fifth Set of Interrogatories, No. 20, 21;<br><br>Ball Decl. ¶ 33, Ex. 29, PPC0004677 (U.S. Income Tax Return for Pacific Packaging for |

FENWICK & WEST LLP
ATTORNEYS AT LAW



| | | |
|---|---|---|
| | | 2018, ███ in gross receipts/sales); |
| | | Ball Decl. ¶ 34, Ex. 30, PPC0004678 (U.S. Income Tax Return for Pacific Packaging for 2019, ███ in gross receipts/sales); |
| | | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 136:7–20 (noting profits went up in 2019); |
| | | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 243:19–244:17 (███████; |
| | | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 249:16–250:9 (███████; |
| | | Ball Decl. ¶ 5, Ex. 2, Jonathan Dep Tr. at 243:5–12 (███████); |
| | | *See also* Table 2 in Memorandum. |
| 15. | Pacific Packaging's projected 2020 sales ███████. | Ball Decl. ¶ 35, Ex. 31, PPC0002603–8 (California Department of Tax and Fee Administration Sales and Use Tax Return for Pacific Packaging for January 2020 through June 2020, reporting ███████; |
| | | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 269:19–270:3 (███████); |

FENWICK & WEST LLP
ATTORNEYS AT LAW

|  |  | *See* Ball Decl. ¶ 7, Ex. 4, Cindy Dep. Tr. at 180:15–20 (stating "recently… we have been so busy just handling just the – the increased volume in sales with the orders and so forth."). |
|---|---|---|
| **There is a crowded field of Fresh Start marks.** | | |
| 16. | Pacific Packaging's Fresh Start mark is one of many in a crowded field of Fresh Start marks. | *See* Butt Decl. ¶ 6; <br><br> *See* Butt Decl. ¶ 6, Ex. 3, Nutrisystem Second Supplemental Response to Plaintiff's First Set of Interrogatories, No. 3, Ex. A (list of third-party Fresh Start marks). |
| 17. | Nutrisystem launched its Nutrisystem FreshStart product line with knowledge that a crowded field of dozens of companies use a Fresh Start mark in commerce. | Butt Decl. ¶ 6; <br><br> Butt Decl. ¶ 6, Ex. 3, Nutrisystem Second Supplemental Response to Plaintiff's First Set of Interrogatories, No. 3, Ex. A (list of third-party Fresh Start marks). |
| 18. | Nutrisystem filed two federal trademark applications for its Fresh Start mark in November 2018: one in International Class 029 for milk-based shakes and one in International Class 044 for weight management programs. | Butt Decl. ¶ 7, Ex. 4, NUTRISYSTEM00002952 (Nutrisystem Trademark Status & Document Retrieval record Serial No. 88183300); <br><br> Butt Decl. ¶ 7, Ex. 5, NUTRISYSTEM00001587 (Nutrisystem Trademark Status & Document Retrieval record Serial No. 88183329). |
| 19. | The USPTO approved for publication Serial No. 88183300, Nutrisystem's application for Fresh Start for milk- | Butt Decl. ¶ 8. |

FENWICK & WEST LLP
ATTORNEYS AT LAW

| | |
|---|---|
| based shakes. | |
| 20. An appeal for U.S. trademark application Serial No. 88183329 is pending before the Trademark Trial and Appeal Board. | Butt Decl. ¶ 8. |
| 21. The USPTO found no likelihood of confusion between Pacific Packaging's mark and Nutrisystem's two Fresh Start trademark applications. | Butt Decl. ¶ 9. |
| **Neither party has a history or intent to license a Fresh Start mark.** | |
| 22. Pacific Packaging has not licensed its Fresh Start mark. | Ball Decl. ¶ 13, Ex. 10, Plaintiff's Responses to Defendant's First Set of Interrogatories, Rog 2 (responding that Pacific Packaging "never assigned, licensed, or transferred its rights" in its Fresh Start mark); Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 155:20–156:16 ("No, we don't do any licensing"); Ball Decl. ¶ 5, Ex. 2, Jonathan Dep. Tr. at 269:6–19 ("I don't believe" Pacific Packaging ever licensed its Fresh Start mark or any other marks); *See* Ball Decl. ¶ 6, Ex. 3, excerpted Transcript of the Deposition of Jennifer Cole ("Jennifer Dep. Tr.") at 217:1–9 ("I don't know" if Pacific Packaging ever licensed mark); Ball Decl. ¶ 7, Ex. 4, Cindy Dep. Tr. at 219:21–220:11. |

FENWICK & WEST LLP
ATTORNEYS AT LAW

| | |
|---|---|
| 23. Pacific Packaging has no intent to license its Fresh Start mark. | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 156:17–19 ("Q: Would you ever license your trademarks to anyone? A: Never."). |
| 24. Prior to this lawsuit, Pacific Packaging had not assessed the value of a license for its marks. | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 275:16–23 (no prior outside analysis of the brand); *See* Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 156:4–8. |
| 25. Nutrisystem has not licensed its Fresh Start mark. | Butt Decl. ¶ 11. |
| 26. Nutrisystem has not paid a licensing fee or royalty for a Fresh Start mark. | Butt Decl. ¶ 11; *See* Butt Decl. ¶ 12, Ex. 6, NUTRISYSTEM00024241 (Nutrisystem royalty-free coexistence agreement with Fresh Start Gourmet); Butt Decl. ¶ 12, Ex. 7, NUTRISYSTEM00005920 (Nutrisystem royalty-free coexistence agreement with Oregon Potato Company). |
| **Nutrisystem has previously entered royalty-free coexistence agreements with third parties using Fresh Start marks.** | |
| 27. Nutrisystem entered a royalty-free coexistence agreement with Fresh Start Gourmet, which uses Fresh Start in connection with prepared foods. | Butt Decl. ¶ 12, Ex. 6, NUTRISYSTEM00024241 (Nutrisystem coexistence agreement with Fresh Start Gourmet). |
| 28. Fresh Start Gourmet agreed that Nutrisystem's use of the Nutrisystem FreshStart mark was not likely to cause confusion among consumers. | Butt Decl. ¶ 12, Ex. 6, NUTRISYSTEM00024241 at NUTRISYSTEM00024242 ("the parties believe that confusion is |

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | | not likely among purchasers and others in the channels of distribution used by the parties as to the source or sponsorship of their respective products"); |
| | | Butt Decl. ¶ 12, Ex. 6, NUTRISYSTEM00024243 ("The parties agree that the parties' respective use. . . is not likely to cause confusion because of the differences in the goods, and the marketing thereof, provided by the respective parties and the sophistication of the parties' respective consumers."). |
| 29. | Nutrisystem entered a royalty-free coexistence agreement with Oregon Potato Company, which uses Fresh Start in connection with smoothies. | Butt Decl. ¶ 12, Ex.7, NUTRISYSTEM00005920 (Nutrisystem coexistence agreement with Oregon Potato Company); |
| | | Ball Decl. ¶ 11, Ex. 8, excerpted Transcript of the Deposition of Steven Schossberger of Oregon Potato Company ("Schossberger Dep. Tr.") at 17:10–18:5 (authenticating Exhibit 146, NUTRISYSTEM00005920, coexistence agreement regarding Nutrisystem FreshStart). |
| 30. | Oregon Potato Company agreed that Nutrisystem's use of the Nutrisystem FreshStart mark was not likely to cause confusion among consumers. | Butt Decl. ¶ 12, Ex. 7, NUTRISYSTEM00005920; Schossberger Dep. Tr. at 19:20–20:3 ("The parties are mutually consenting to each other's marks based on their respective determination that there is no likelihood of confusion that |

FENWICK & WEST LLP
ATTORNEYS AT LAW

| | |
|---|---|
| | consumers have been or will be confused by the use and registration of their respective marks, particularly in view of the differences in appearance between the marks and the type of goods and services the parties offer."); |
| | Ball Decl. ¶ 11, Ex. 8, Schossberger Dep. Tr. at 20:15–21 ("Oregon Potato Company did form the opinion, based upon its research on the internet and otherwise, that there was no likelihood of confusion between Oregon Potato Company's use of Fresh Start mark and Nutrisystem's use of the Fresh Start mark as a basis for entering into this agreement."); |
| | *See also* Ball Decl. ¶ 11, Ex. 8, Schossberger Dep. Tr. at 22:23–25 ("Q: Have you ever heard of a company called Fresh Start Vitamin Company? A: No."). |
| **Pacific Packaging has previously** ████████████████████████ | |
| 31.  | Ball Decl. ¶ 18, Ex. 15, Plaintiff's Responses to Defendant's Third Set of Requests for Admissions, No. 225;<br><br>Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 177:4–8 (acknowledging Pacific Packaging "never got paid money before" in trademark dispute agreements); |



|  |  |  |
|---|---|---|
|  |  | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 178:10–17 (discussing prior trademark coexistence agreements without monetary payments); |
|  |  | Ball Decl. ¶ 36, Ex. 32, PPC0000445 (████████); |
|  |  | Ball Decl. ¶ 37, Ex. 33, PPC0000188 (██████); |
|  |  | Ball Decl. ¶ 38, Ex. 34, PPC0000196 (███████████); |
|  |  | Ball Decl. ¶ 39, Ex. 35, PPC0000439 (███████) |
|  |  | Ball Decl. ¶ 40, Ex. 36, PPC0000058 (█████████); |
|  |  | Ball Decl. ¶ 41, Ex. 37, PPC0000006 (████████████); |
|  |  | Ball Decl. ¶ 42, Ex. 38, PPC0000142 (████████). |
| 32. | ████████████ | Ball Decl. ¶ 36, Ex. 32, Exhibit 134 of Bob Dep. Tr., PPC0000445–49 (███████); Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 182:21–183:17; Ball Decl. ¶ 36, Ex. 32. |
| 33. | ████████████ | Ball Decl. ¶ 37, Ex. 33, Exhibit 135 of Bob Dep. Tr., PPC0000188 (██████ |

FENWICK & WEST LLP
ATTORNEYS AT LAW



| | | |
|---|---|---|
| | ■ ); | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 184:19–185:12;<br><br>Ball Decl. ¶ 37, Ex. 33. |
| 34. | | Ball Decl. ¶ 38, Ex. 34, Exhibit 136 of Bob Dep. Tr., PPC0000196–200 ■ ;<br><br>Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 186:17–24, 187:11–188:2;<br><br>Ball Decl. ¶ 38, Ex. 34. |
| 35. | | Ball Decl. ¶ 39, Ex. 35, Exhibit 137 of Bob Dep. Tr., PPC0000439–44 ■ );<br><br>Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 189:24–190:17;<br><br>Ball Decl. ¶ 39, Ex. 35. |
| 36. | | Ball Decl. ¶ 40, Ex. 36, Exhibit 126 of Jonathan Dep. Tr., PPC0000058–60 ( ■ ;<br><br>Ball Decl. ¶ 5, Ex. 2, Jonathan Dep. Tr. at 282:2–283:9;<br><br>Ball Decl. ¶ 40, Ex. 36. |
| 37. | | Ball Decl. ¶ 41, Ex. 37, PPC0000006 ( ■ ). |

FENWICK & WEST LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| 38. | ██████████████ | Ball Decl. ¶ 42, Ex. 38, PPC0000142 ██████████████. |

**Non-party Healthways WholeHealth Living is unrelated to this dispute.**

| | | |
|---|---|---|
| 39. | Healthways WholeHealth Living entered into an agreement with Pacific Packaging in 2014. | Ball Decl. ¶ 43, Ex. 39, PPC0003064 (email exchange between Healthways WholeHealth Living and Pacific Packaging). |
| 40. | Healthways WholeHealth Living is a program run by Tivity Health Inc.'s Healthcare business segment, a separate division from its Nutrition business segment. | Butt Decl. ¶ 13, Ex. 8, NUTRISYSTEM00006226 (excerpted Form 10-Q for Tivity Health, Inc. dated November 12, 2019, reflecting Tivity's separate Healthcare and Nutrition business segments). |
| 41. | Tivity Health acquired Nutrisystem in March 2019. | Butt Decl. ¶ 13, Ex. 8, NUTRISYSTEM00002552 (excerpted Form 10-Q for Tivity Health, Inc. dated November 12, 2019, reflecting the date of the Nutrisystem acquisition). |
| 42. | Tivity had no role in Nutrisystem's selection of the Nutrisystem FreshStart mark or product launch, both of which occurred before Tivity acquired Nutrisystem. | Butt Decl. ¶ 14. |

| | | |
|---|---|---|
| **Nutri/System IPHC no longer exists.** | | |
| 43. | Tivity Health dissolved Nutri/System IPHC on May 31, 2019. | Butt Decl. ¶ 15, Ex. 9, NUTRISYSTEM00000285 (Certificate of Dissolution). |
| 44. | Upon dissolution of Nutri/System IPHC, all its assets and liabilities transferred to Nutrisystem Inc. | Butt Decl. ¶ 14. |
| **Pacific Packaging did not contact Nutrisystem or raise this dispute until after filing this lawsuit.** | | |
| 45. | Pacific Packaging first contacted Nutrisystem about this trademark dispute after filing its Complaint on May 31, 2019. | Ball Decl. ¶ 23, Ex. 20, NUTRISYSTEM00005928 (Demand Letter from Pacific Packaging to Nutrisystem regarding its Fresh Start mark, dated May 31, 2019). |
| 46. | Pacific Packaging filed its opposition to Nutrisystem's application for Fresh Start with the Trademark Trial and Appeal Board in October 2019. | Ball Decl. ¶ 22, Ex. 19 (Trademark Trial and Appeal Board Docket captured from the TTAB's website on January 13, 2021 reflecting Pacific Packaging's filing date of October 30, 2019 for its Opposition to Nutrisystem's Fresh Start mark). |
| **Pacific Packaging alleges reverse confusion.** | | |
| 47. | Pacific Packaging is a smaller company than Nutrisystem ███ ███████. | Ball Decl. ¶ 34, Ex. 30, PPC0004678 (U.S. Income Tax Return for Pacific Packaging for 2019, ███████████████ ███); Ball Decl. ¶ 12, Ex. 9, Plaintiff's Fourth Supplemental Initial Disclosures (disclosing damages |

FENWICK & WEST LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | | claims seeking disgorgement of an asserted ▮▮▮▮ in revenues for Nutrisystem FreshStart in 2019 and a "reasonable royalty" of ▮▮▮▮ from Nutrisystem). |
| 48. | Christian Hauter contacted Pacific Packaging to ask if Nutrisystem was acquiring the company. | Ball Decl. ¶ 8, Ex. 6, excerpted Transcript of the Deposition of Christian Hauter ("Hauter Dep. Tr.") at 16:6–17:4 (recalling how he saw Nutrisystem's commercial and thought Pacific Packaging may have been acquired by the "big company"); Ball Decl. ¶ 8, Ex. 6, Hauter Dep. Tr. at 68:4–69:9 (recounting that his goal in calling Pacific Packaging was to confirm whether he could still purchase Pacific Packaging's vitamins); Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 211:5–25. |
| 49. | Pacific Packaging has only identified one instance of alleged confusion. | Ball Decl. ¶ 13, Ex. 10, Plaintiff's Responses to Defendant's First Set of Interrogatories, No. 4 (responding to request for "each incident of alleged actual confusion" that "several" customers in addition to Hauter contacted Pacific Packaging about Nutrisystem); Ball Decl. ¶ 14, Ex. 11, Plaintiff's Supplemental Responses to Defendant's First Set of Interrogatories, No. 4 (supplementing prior response by |

FENWICK & WEST LLP
ATTORNEYS AT LAW

| | providing further details only about Hauter and not detailing any other instances of confusion or identifying any other customers). |
|---|---|
| **Pacific Packaging cannot show harm attributed to Nutrisystem FreshStart.** | |
| 50. Pacific Packaging has no documents or knowledge supporting a claim that it lost sales attributed to Nutrisystem. | Ball Decl. ¶ 15, Ex. 12, Plaintiff's Responses to Defendant's Second Set of Interrogatories, No. 13; |
| | Ball Decl. ¶ 17, Ex. 14, Plaintiff's Responses to Defendant's First Set of Requests for Admissions, Nos. 111, 112 (claiming insufficient information to respond, then never supplemented); |
| | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 221:3–222:18 (admitting that he doesn't have information on lost sales, doesn't know sales figures, doesn't have documents showing sales figures); |
| | Ball Decl. ¶ 5, Ex. 2, Jonathan Dep. Tr. at 166:2–12 (recognizing increased sales in 2020 compared to 2019); |
| | Ball Decl. ¶ 5, Ex. 2, Jonathan Dep. Tr. at 242:24–243:12 (acknowledging no lost sales in 2019; and rather sales actually increased 2018–2019); |
| | *See* Ball Decl. ¶ 6, Ex. 3, Jennifer Dep. Tr. at 216:3–15 (responding "I don't know" about any lost sales in 2018 or 2019 due to |

FENWICK & WEST LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | | Nutrisystem); |
| | | Ball Decl. ¶ 7, Ex. 4, Cindy Dep. Tr. at 193:10–14. |
| 51. | Pacific Packaging has no documents or knowledge supporting a claim that it lost revenue attributed to Nutrisystem. | Ball Decl. ¶ 15, Ex. 12, Plaintiff's Responses to Defendant's Second Set of Interrogatories, No. 13; |
| | | Ball Decl. ¶ 17, Ex. 14, Plaintiff's Responses to Defendant's First Set of Requests for Admissions, Nos. 113, 114 (claiming insufficient information to respond then never supplemented); |
| | | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 177:9–25 ("I don't know what amount that I'm owed."); |
| | | *See* Ball Decl. ¶ 6, Ex. 3, Jennifer Dep. Tr. at 216:3–15; |
| | | *See* Ball Decl. ¶ 7, Ex. 4, Cindy Dep. Tr. at 193:10–14. |
| 52. | Pacific Packaging has no documents or knowledge supporting a claim that it suffered actual injury attributed to Nutrisystem. | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 66:15–21 (responding "I don't know" to Nutrisystem's impact on Pacific Packaging's business); |
| | | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 165:9–166:25 (identifying no evidence of harm to reputation); |
| | | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 276:6–17 (admitting he doesn't know what damages PPCI has suffered because of Nutrisystem); |

| | |
|---|---|
| | Ball Decl. ¶ 5, Ex. 2, Jonathan Dep. Tr. at 196:10–12 (responding "I wouldn't see why we would have to" do ads to clarify the lack of connection between Pacific Packaging and Nutrisystem); |
| | Ball Decl. ¶ 5, Ex. 2, Jonathan Dep. Tr. at 217:11–218:12 (identifying no evidence of harm to reputation attributed to Nutrisystem beyond the one call from Christian Hauter); |
| | Ball Decl. ¶ 5, Ex. 2, Jonathan Dep. Tr. at 220:16–25 (admitting Pacific Packaging has no factual support for any harm to Pacific Packaging, just hypothetical expert analysis that Plaintiff has not disclosed in this action); |
| | Ball Decl. ¶ 5, Ex. 2, Jonathan Dep. Tr. at 241:14–22 (identifying no factual basis to assess claim of $10 million in reputational harm); |
| | *See* Ball Decl. ¶ 6, Ex. 3, Jennifer Dep. Tr. at 136:6–19 (responding "I don't know" if Pacific Packaging "lost money because of Nutrisystem"); 216:3–15; |
| | *See* Ball Decl. ¶ 7, Ex. 4, Cindy Dep. Tr. at 192:12–193:14 (raising speculative harm "potentially" and "may" exist but identifying no evidence). |

FENWICK & WEST LLP
ATTORNEYS AT LAW



| 53. | | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 40:20–22 (admitting no changes to Pacific Packaging's use of Fresh Start mark because of Nutrisystem); |
| | | Ball Decl. ¶ 4, Ex. 1, Bob Dep. Tr. at 120:7–9 (admitting Pacific Packaging did not change advertising because of Nutrisystem); |
| | | Ball Decl. ¶ 5, Ex. 2, Jonathan Dep. Tr. at 64:16–18 (admitting no change to Pacific Packaging's mark because of Nutrisystem); |
| | | Ball Decl. ¶ 5, Ex. 2, Jonathan Dep. Tr. at 158:21–23 (admitting no change to Pacific Packaging's website because of Nutrisystem); |
| | | Ball Decl. ¶ 5, Ex. 2, Jonathan Dep. Tr. at 228:24–229:7 (admitting no change to Pacific Packaging's expansion plans due to Nutrisystem); |
| | | Ball Decl. ¶ 5, Ex. 2, Jonathan Dep. Tr. at 242:20–23 ("Like I said, no, we have not done anything different in response to Nutrisystem."); |
| | | Ball Decl. ¶ 6, Ex. 3, Jennifer Dep. Tr. at 145:24–146:8 ( ); |
| | | Ball Decl. ¶ 6, Ex. 3, Jennifer Dep. Tr. at 204:5–13 |

FENWICK & WEST LLP
ATTORNEYS AT LAW

|  | ██████████████████████ ; Ball Decl. ¶ 7, Ex. 4, Cindy Dep. Tr. at 192:15–24. |
|---|---|

## II.   CONCLUSIONS OF LAW

### A.   Summary Judgment Is Warranted Where There is No Genuine Dispute of Material Fact.

1.   A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

2.   Rule 56 mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B.   Plaintiffs Must Demonstrate a Reasonable Basis for a Royalty.

3.   Reasonably royalties are a form of a plaintiff's lost profits damages based on "a calculation of the hypothetical licensing royalties that an infringer would have paid to the senior owner of a mark." *Lodestar Anstalt v. Bacardi & Co.*, No. 16-cv-06411-CAS(FFMx), 2019 WL 8105378, at *13 (C.D. Cal. July 3, 2019) (citing *QS Wholesale, Inc. v. World Marketing, Inc.*, 2013 WL 1953719, at *4 (C.D. Cal. May 9, 2013)).

4.   There must be a "legitimate proposed basis" for a royalty claim. *M2 Software Inc. v. Viacom Inc.*, 223 F. App'x 653, 655 (9th Cir. 2007). A reasonable basis is most often a prior, existing licensing agreement or a history of licensing marks to third parties. *Lodestar*, No. 2019 WL 8105378, at *13 (denying royalties where licensing history is lacking) (citations omitted).

5.   The plaintiff bears the burden of proving "both the fact and the amount of damage" with "reasonable certainty." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d

FENWICK & WEST LLP
ATTORNEYS AT LAW

1400, 1407 (9th Cir. 1993).

6.      Ninth Circuit law rejects speculative damages claims for royalties.  *See*
*Viacom Inc.*, 223 F. App'x at 655 (denying a royalty award "[i]n the absence of a
legitimate proposed basis" for calculations).  "Where a plaintiff has failed to present
evidence of an intent to license its trademark, a reasonable royalty analysis
necessarily is speculation."  *Lodestar*, No. 2019 WL 8105378, at *13 (citing *Quia
Corp. v. Mattel, Inc.*, No. 10-cv-1902 JF (HRL), 2011 WL 2749576, at *6 (N.D.
Cal. July 14, 2011)).

7.      A plaintiff's "claim that it 'likely' would license its mark 'at some
point in the future,' is insufficient as a matter of law to support a claim for lost
profits in the form of a reasonable royalty."  *Quia*, 2011 WL 2749576, at *7; *M2
Software, Inc. v. Madacy Entm't*, No. 00-cv-2853 AHM (RZx), 2003 WL25667610,
at *1 (C.D. Cal. Jan. 23, 2003) (denying royalties in a reverse confusion case where
there was no evidence the plaintiff "was ever willing to license its mark to
anyone"); *Trovan, Ltd. v. Pfizer, Inc.*, No. 98-cv-00094 LGB MCX, 2000 WL
709149, at *17–18 (C.D. Cal. May 24, 2000) (discussing legal principles requiring
history of licensing negotiations to support royalty awards).

**C.      Disgorgement of Profits Is Improper for Reverse Confusion**.

8.      Reverse confusion occurs when consumers dealing with the senior
mark holder," the plaintiff, "believe that they are doing business with the junior
one," the defendant.  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630
(9th Cir. 2005).  Reverse confusion involves lower profile plaintiffs suing more
prominent companies.  *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127,
1130 n.5 (9th Cir. 1998).  Where there is reverse confusion, the plaintiff's sales or
reputation are affected by the infringement, not the defendant's.  *See Dreamwerks*,
142 F.3d at 1129.

9.      Awarding profits for unjust enrichment in a trademark case "is proper
only where the defendant is 'attempting to gain the value of an established name of

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

another.'" *Lindy Pen*, 982 F.2d at 1406 (internal quotations omitted).  Because the reverse confusion defendant "does not seek to trade on the good will and name of the senior user; instead he overwhelms it," "[a]n intent to exploit an existing mark 'is necessarily absent in a reverse confusion case.'" *Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, No. 14-cv-04853-PSG, 2015 WL 9028123, at *2 (N.D. Cal. Dec. 16, 2015) (holding that profits are not an available remedy for a reverse confusion case).  An award of profits is inappropriate as a matter of law where the defendant has no intent to capitalize on the plaintiff's name.  *Lindy Pen*, 982 F.2d 1407.  Without evidence that the defendant intended to trade on the plaintiff's established name, a plaintiff cannot show the defendant recovered ill-gotten gains that would justify an unjust enrichment remedy.  *See Spin Master, Ltd. v. Zobmondo Entertainment, LLC*, 944 F. Supp. 2d 830, 849 (C.D. Cal. 2012)(holding that disgorgement was inappropriate as a matter of law even when the defendant willfully blocked the plaintiff's expansion in the market because there was no evidence that the defendant traded on the plaintiff's name).

10.     An award of profits "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a).

11.     "Plaintiff is not . . . entitled to a windfall." *Lindy Pen*, 982 F.2d at 1405 (ellipses in original).  "There is something basically unseemly and grossly uneconomical in an award to a small company of an amount of money several times its net worth to use to resuscitate an infringed trademark.  When such an award is many times the value of the trademark property, then it appears that plaintiff has received a windfall, not compensation."  5 McCarthy on Trademarks and Unfair Competition § 30:84 (5th ed.).

**D.     Compensatory Profits Are Inappropriate for Reverse Confusion.**

12.     The compensatory approach awards defendant's profits as a proxy for plaintiff's lost profits.  *Spin Master*, 944 F. Supp. 2d at 840 (citing *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 121 (9th Cir. 1968)).

13.    "[A]n award of the defendant's profits is inappropriate in cases of reverse confusion, where the junior user's profits are likely to exceed the senior user's diverted sales." *Quia*, 2011 WL 2749576, at *7.

**E.    Willfulness Remains Relevant to Choosing a Fitting Remedy**.

14.    "[A] trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020).  "[I]t is a principle long reflected in equity practice where district courts have often considered a defendant's mental state, among other factors, when exercising their discretion in choosing a fitting remedy." *Id.*

15.    Pre-*Romag* Ninth Circuit law remains instructive where it weighs and assesses mental state in its analysis on whether there should be any award of disgorgement of profits. *See Romag*, 140 S. Ct. at 1497.  Applying *Romag*, it is "especially appropriate" to consider willfulness where the plaintiff's damages theory is "as a restitutionary measure of damages."  *Airhawk Int'l, LLC v. Ontel Prods. Corp.*, No. 18-cv-00073-MMA-AGS, 2020 WL 2306440, at *5 (S.D. Cal. May 8, 2020).

16.    Knowledge alone of another's mark is not willful infringement.  *See Lindy Pen*, 982 F.2d at 1406 (no willful infringement where defendant's knowledge of plaintiff's mark was "attenuated," plaintiff's mark was weak, and there was no evidence of actual confusion); *see also One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164 (9th Cir. 2009) ("In a crowded field of similar marks, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd."); *BDO Remit (USA), Inc. v. Stichting BDO*, No. 11-cv-04054 MMM (CWx), 2012 WL 12895658, at *28 (C.D. Cal. Sep. 19, 2012) ("[P]rior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith and may be consistent with good faith . . . .").

FENWICK & WEST LLP
ATTORNEYS AT LAW

**F.      Claims Against a Dissolved Entity Whose Liabilities and Assets Were Transferred to Defendant Entity Should be Dismissed.**

17.      Claims can proceed solely against a single defendant when co-defendants have merged and the remaining party is liable for all actions. *See, e.g.*, *Rich v. BAC Home Loans Servicing, LP*, No. 11-cv-00511-PHX-SRB, 2013 WL 10104610, at *1 n.2 (D. Ariz. July 10, 2013)) (permitting a case to proceed against a single entity because "the two entities have merged and [defendant] is now liable for all actions").


Dated:  January 15, 2021                          FENWICK & WEST LLP


                                                            By: */s/ Eric J. Ball*
                                                                   Eric J. Ball

                                                            Counsel for Defendants
                                                            NUTRISYSTEM, INC. and
                                                            NUTRI/SYSTEM IPHC