ERIC BALL (CSB No. 241327)
eball@fenwick.com
MEGHAN E. FENZEL (CSB No. 324139)
mfenzel@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

SAPNA S. MEHTA (CSB No. 288238)
smehta@fenwick.com
JANIE Y. MILLER (CSB No. 312715)
jmiller@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorneys for Defendants
NUTRISYSTEM, INC. and
NUTRI/SYSTEM IPHC, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PACIFIC PACKAGING CONCEPTS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>NUTRISYSTEM, INC., a Delaware corporation; NUTRI/SYSTEM IPHC, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:19-cv-04755-ODW(Ex)<br><br>**NUTRISYSTEM'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]**<br><br>Hearing: March 8, 2021<br>Time: 1:30 p.m.<br>Ctrm: 5D, 5th Floor<br>Judge: Hon. Otis D. Wright II<br><br>Trial Date: April 20, 2021 |

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL BACKGROUND ......................................................................... 2

        A.      Nutrisystem's Weight Management Products and Services. ............... 2

        B.      Nutrisystem's Adoption of Nutrisystem FreshStart. ........................... 3

        C.      Nutrisystem's Federal Trademark Applications. ................................. 4

        D.      Pacific Packaging Concepts, Inc.'s Vitamins. .................................... 4

        E.      Pacific Packaging Concepts, Inc.'s Claimed Trademark ..................... 5

III.    ARGUMENT .................................................................................................. 5

        A.      Plaintiff Cannot Establish Confusion as a Matter of Law. .................. 5

        B.      Plaintiff's Mark is Weak and Entitled to Only Narrow
                Protection. .......................................................................................... 6

        C.      Pacific Packaging Admits that the Parties' Products are
                "Completely Different." .................................................................... 10

        D.      The Marks are Dissimilar in the Marketplace Context. ..................... 14

        E.      Plaintiff Has No Undisputed Nor Credible Evidence of
                Confusion. ......................................................................................... 17

        F.      The Substantial Difference in the Parties' Sales Channels and
                Marketing Supports No Likelihood of Confusion. ............................ 19

        G.      The Parties' Consumers are Thoughtful in Their Purchases. ............ 21

        H.      The Undisputed Facts Show Nutrisystem's Good Faith. ................... 23

        I.      The Parties Are Not Expanding Into Each Other's Markets. ............. 24

IV.     CONCLUSION ............................................................................................ 25

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*,
  616 F.2d 440 (9th Cir. 1980) ............................................................ 6

*Americana Trading Inc. v. Russ Berrie & Co.*,
  966 F.2d 1284 (9th Cir. 1992) .......................................................... 15

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ......................................................... 6, 10

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................ 5

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
  457 F.3d 1062 (9th Cir. 2006) .......................................................... 21

*AutoZone, Inc. v. Tandy Corp.*,
  373 F.3d 786 (6th Cir. 2004) ............................................................ 14

*BDO Remit (USA), Inc. v. Stichting BDO*,
  No. 11-cv-04054 MMM, 2012 WL 12895658
  (C.D. Cal. Sept. 19, 2012) ............................................................... 23

*Blue Ribbon Feed Co. v. Farmers Union Cent. Exch., Inc.*,
  731 F.2d 415 (7th Cir. 1984) ............................................................ 25

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ........................................................... 7

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*,
  213 F.3d 474 (9th Cir. 2000) ............................................................. 5

*Cohn v. Petsmart, Inc.*,
  281 F.3d 837 (9th Cir. 2002) ................................................... 10, 14, 15

*Cutting Edge Sols., LLC v. Sustainable Low Maint. Grass, LLC*,
  No. 14-cv-02770-WHO, 2014 WL 5361548
  (N.D. Cal. Oct. 20, 2014) ................................................................ 18

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
  142 F.3d 1127 (9th Cir. 1998) ........................................................... 6

*Echo Drain v. Newsted*,
  307 F. Supp. 2d 1116 (C.D. Cal. 2003) ................................................. 7

FENWICK & WEST LLP
ATTORNEYS AT LAW

1
2
3

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

4
5
*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135 (9th Cir. 2002) ................................................................. 5

6
*Fitbug Limited v. Fitbit, Inc.*,
   78 F. Supp. 3d 1180 (N.D. Cal. 2015) ................................................... 23

7
8
*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   618 F.3d 1025 (9th Cir. 2010) ................................................................. 5

9
10
*Glow Indus., Inc. v. Lopez*,
   252 F. Supp. 2d 962 (C.D. Cal. 2002) ................................................ 7, 8

11
*Groupion, LLC v. Groupon, Inc.*,
   859 F. Supp. 2d 1067 (N.D. Cal. 2012) ................................................ 14

12
13
*Instant Media, Inc. v. Microsoft Corp.*,
   No. C 07-02639 SBA, 2007 WL 2318948 (N.D. Cal. Aug. 13, 2007) ................ 6

14
15
*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
   287 F.3d 866 (9th Cir. 2002) ................................................................. 17

16
*Kiva Health Brands LLC v. Kiva Brands Inc.*,
   402 F. Supp. 3d 877 (N.D. Cal. 2019) ................................................... 22

17
18
*Lambert Corp. v. LBJC Inc.*,
   No. 2:13-cv-00778-CAS(JCGx), 2014 WL 2737913 (C.D. Cal. June 16,
   2014) ...................................................................................................... 25

19
20
*Lindy Pen Co. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993) ............................................................... 23

21
22
*M2 Software, Inc. v. Madacy Entm't*,
   421 F.3d 1073 (9th Cir. 2005) ........................................................*passim*

23
24
*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
   290 F. Supp. 2d 1083 (C.D. Cal. 2003) ................................................ 14

25
*Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*,
   856 F.2d 1445 (9th Cir. 1988) ............................................................... 16

26
27
*Moose Creek, Inc. v. Abercrombie & Fitch Co.*,
   331 F. Supp. 2d 1214 (C.D. Cal. 2004) .................................................. 7

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Move Press, LLC v. Peloton Interactive, Inc.*,
No. 18-cv-01686 JAK, 2019 WL 4570018
(C.D. Cal. Sept. 5, 2019) ............................................................ 16, 23

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,
638 F.3d 1137 (9th Cir. 2011) ............................................................. 21

*Norm Thompson Outfitters, Inc. v. General Motors Corp.*,
448 F.2d 1293 (9th Cir. 1971) ............................................................. 15

*Oculu, LLC v. Oculus VR, Inc.*,
No. 14-cv-0196 DOC(JPRx), 2015 WL 3619204
(C.D. Cal. June 8, 2015) ..................................................................... 21

*One Indus., LLC v. Jim O'Neal Distrib., Inc.*,
578 F.3d 1154 (9th Cir. 2009) ............................................................... 8

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
354 F.3d 1020 (9th Cir. 2004) ............................................................. 21

*Rearden LLC v. Rearden Commerce, Inc.*,
683 F.3d 1190 (9th Cir. 2012) ............................................................. 17

*Reeves v. General Nutrition Centers, Inc.*,
No. SA CV10-01653 JAK, 2012 WL 13018362
(C.D. Cal. Apr. 2, 2012) ............................................................... 10, 22

*Rodeo Collection, Ltd. v. W. Seventh*,
812 F.2d 1215 (9th Cir. 1987) ............................................................... 6

*Sazerac Co. v. Fetzer Vineyards, Inc.*,
265 F. Supp. 3d 1013 (N.D. Cal. 2017) aff'd,
786 F. App'x 662 (9th Cir. 2019) ................................................... 10, 18

*Scott Paper Co. v. Scott's Liquid Gold, Inc.*,
589 F.2d 1225 (3d Cir. 1978) ................................................................ 6

*Skechers U.S.A., Inc. v. Vans, Inc.*,
No. CV 07-01703 DSF, 2007 WL 4181677
(C.D. Cal. Nov. 20, 2007) .................................................................. 15

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ............................................................. 18

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
   987 F. Supp. 2d 1023 (C.D. Cal. 2013) ........................................................ 17, 18

*Surfvivor Media, Inc. v. Survivor Prods.*,
   406 F.3d 625 (9th Cir. 2005) .................................................................... 14, 21

*United States v. Topkov*,
   No. CV 13-8204-GHK, 2015 WL 12683792 (C.D. Cal. Feb 5, 2015) ................ 9

**STATUTES AND RULES**

21 U.S.C. § 321 .......................................................................................... 12

21 U.S.C. § 321(f) ...................................................................................... 12

21 U.S.C. § 321(ff) ..................................................................................... 12

DSHEA, Public law 103-417 ................................................................. 12, 13

Federal Rule of Civil Procedure 26(a)(2)(D) ............................................... 18

Federal Rule of Civil Procedure 56 ............................................................. 5

Federal Rule of Civil Procedure 56(c) ......................................................... 5

Lanham Act ................................................................................................ 25

**OTHER AUTHORITIES**

21 C.F.R. § 101 .......................................................................................... 12

FENWICK & WEST LLP
ATTORNEYS AT LAW

# I.    INTRODUCTION

Plaintiff, Pacific Packaging Concepts, Inc.'s founder and president testified that:  the parties' products are as different as roller skates and space shuttles.  He is right.  A weight loss milk shake is not a vitamin packet—and consumers can tell the difference.  Given these differences, the Trademark Office found no confusion between Pacific Packaging's claimed Fresh Start mark and Nutrisystem's Fresh Start mark.  Nutrisystem's survey expert found no likelihood of confusion—in both a forward and reverse confusion survey.  Third parties in the market, who also use a Fresh Start mark to sell food and smoothies, independently assessed Nutrisystem's use of the Nutrisystem FreshStart mark and found no confusion.  And despite what Pacific Packaging claims is millions of dollars in sales and advertising, it was only able to identify one individual that it claims was confused.  That one person was not confused.  But even so, one person in the context of millions is not an appreciable number of reasonably prudent consumers.

Pacific Packaging's motion fails to proffer undisputed facts supporting a likelihood of confusion.  First, Pacific Packaging's weak Fresh Start mark is but one mark in a crowded field of dozens of Fresh Start marks.  Second, Pacific Packaging offers vitamins sold on racks in convenience stores.  Nutrisystem offers weight loss milk shakes.  As Pacific Packaging admitted, the parties' products are "completely different" and "there is no comparison."  Third, the parties' use of their respective marks are distinct—especially given Nutrisystem's use of its known Nutrisystem mark as part of Nutrisystem FreshStart.  Consumers know they are getting a product from Nutrisystem, and only Nutrisystem.  Fourth, Pacific Packaging has no undisputed or credible evidence of actual confusion.  Fifth, the parties do not offer the products at issue in the same channels.  Ninety percent of the Nutrisystem FreshStart shakes were offered exclusively through the Nutrisystem-branded website and call center.  Sixth, beginning a weight loss journey through Nutrisystem is a thoughtful and considered purchase.  This reduces

the likelihood of confusion.  Seventh, Nutrisystem selected the Fresh Start mark in good faith, and multiple third parties finding no confusion confirm the reasonableness of its good faith.  Finally, Pacific Packaging cites no undisputed facts that it plans to expand into weight loss shakes or services.

Against this evidence and the disputed facts, Pacific Packaging's motion claims that there is confusion between their use of Fresh Start and Nutrisystem's use of Nutrisystem FreshStart—as a matter of law.  Drawing all justifiable inferences from the disputed and undisputed facts in Nutrisystem's favor, there are many material issues of fact that should be decided at trial.  The Court should deny Pacific Packaging's motion.

## II.   FACTUAL BACKGROUND

### A.   Nutrisystem's Weight Management Products and Services.

Nutrisystem has been a leader in the weight management industry since its founding in 1976.  Declaration of Jay Butt in support of Opposition ("Butt Opp. Decl.") ¶ 2.  Weight management products and services lie at the heart of Nutrisystem's offerings.  *See* Declaration of Eric Ball in support of Opposition ("Ball Opp. Decl.") ¶ 63 Ex. 62 (Deposition Transcript of Bill MacBride ("MacBride Dep. Tr.") at 49:17–51:14 (describing Nutrisystem's offerings as "variations of our weight loss plan" and "all of those products that would be part of those weight loss plans"); *id.* ¶ 67, Ex. 66 (Deposition Transcript of LeeAnn Kindness ("Kindness Dep. Tr.") at 325:10–325:18 (Nutrisystem's resources webpage for its customers, "The Leaf," provides information on "[a]nything that has to do with weight loss, nutrition, fitness")).  Nutrisystem markets its Nutrisystem FreshStart shakes as a "delicious" complement to weight loss that will serve as a source of protein and fiber and "reduce belly bloat."  *See* Butt Opp. Decl. ¶¶ 11–17, Exs. 5–11.  The shakes are further designed to "keep you feeling fuller, longer" to aid your weight loss journey.  *See* Butt Opp. Decl. ¶ 15, Ex. 9.  Nutrisystem's shake mixes, meal kits, and a la carte menu items are offered as part

FENWICK & WEST LLP
ATTORNEYS AT LAW

of a balanced diet and exercise program to promote and achieve weight loss goals. *See* Butt Opp. Decl. ¶¶ 7, 11, Ex. 5.  Nutrisystem also provides weight counseling services and offers the NuMi software application, designed to help customers track their weight loss.  *Id.* ¶ 3; Kindness Dep. Tr. at 24:3–16 (discussing NuMi).

Nutrisystem refers to each calendar year as a "diet season" and offers new products at the start of each diet season around January.  *See* Butt Opp. Decl. ¶ 2; MacBride Dep. Tr. at 71:8–72:6; Kindness Dep. Tr. at 311:21–312:4.  For the 2019 diet season, Nutrisystem sold a first week kick off program under its FreshStart mark with a meal kit and shake mixes unique for that diet year.  Butt Opp. Decl. ¶¶ 2, 7.  Beginning in December 2018, Nutrisystem sold its FreshStart kits and shake mixes in white and green packaging featuring both the well-known NUTRISYSTEM housemark and Nutrisystem's FreshStart mark.  Butt Opp. Decl. ¶ 12, Ex. 6.  All of Nutrisystem's products bear the NUTRISYSTEM housemark year after year, as its product lines change with each diet season, but the widely recognized NUTRISYSTEM mark is the foundation of the brand.  Butt Opp. Decl. ¶ 2.  Consistent with this practice, Nutrisystem discontinued its FreshStart-branded products in December 2019.  *See* Butt Opp. Decl.¶ 18.

## B.    Nutrisystem's Adoption of Nutrisystem FreshStart.

For years, dozens of other companies have used a Fresh Start mark in a crowded field of Fresh Start and FreshStart marks for a variety of products—including for vitamins, food, and beverages.  Butt Opp. Decl. ¶ 29, Ex. 3.  Before Nutrisystem used Nutrisystem FreshStart in 2019, Nutrisystem used the marks Sure Start for a fiber drink and Simply Fresh for food.  Ball Opp. Decl. ¶¶ 2, 3, Exs. 1, 2.  Nutrisystem was aware of the crowded field of Fresh Start-related marks for a variety of products when it launched Nutrisystem FreshStart in 2019.  Butt Opp. Decl. ¶ 29, Ex. 14 (Rog 3, 10, 11, Ex. A).  Given the crowded field of Fresh Start marks, Nutrisystem's prior use of Sure Start and Simply Fresh, and Nutrisystem's use of its NUTRISYSTEM housemark, Nutrisystem reasonably believed that it

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   could use Nutrisystem FreshStart without any likelihood of confusion with any

2   other Fresh Start-related mark.  *See id.*  Nutrisystem was right.  There has been no

3   credible evidence of confusion, and Pacific Packaging does not dispute that it has

4   no lost sales and no lost revenue.  Dkt. 67-2 ¶¶ 50, 51.

5   ### C.   Nutrisystem's Federal Trademark Applications.

6   The United States Patent and Trademark Office ("USPTO") did not find any

7   likelihood of confusion between the parties' marks.  In November 2018,

8   Nutrisystem filed two trademark applications for its FRESH START mark.  Butt

9   Opp. Decl. ¶¶ 8, 9, Exs. 3, 4.  The USPTO approved Nutrisystem's FreshStart

10  application for publication, Serial No. 88183300, for milk-based shakes in

11  International Class 029.  *Id.* at ¶ 8, Ex. 3.  During review of Nutrisystem's

12  applications, the USPTO considered any potential likelihood of confusion with

13  other Fresh Start marks.  Butt Opp. Decl. ¶ 8, Ex. 3; Ball Opp. Decl. ¶¶ 4, 5, Exs. 3,

14  4.  It determined that there was no likelihood of confusion with any of Pacific

15  Packaging's registered marks.  *See id.*

16  ### D.   Pacific Packaging Concepts, Inc.'s Vitamins.

17  Pacific Packaging sells vitamin and mineral packets under the name "Fresh

18  Start Vitamin Company."  Ball Opp. Decl ¶ 68, Ex. 67 (Deposition Transcript of

19  Aubrey "Bob" Cole ("Bob Dep. Tr.")) at 23:5–9.  Pacific Packaging's vitamins

20  come in single-use packets, stapled to cardstock, as well as in boxes that contain

21  larger quantities of single use packets.  Ball Opp. Decl. ¶¶ 40, 42, Ex. 39, 41; Bob

22  Dep. Tr. at 89:8–24, 91:5–92:3.  While Pacific Packaging alleges harm arising from

23  Nutrisystem's use of its FreshStart mark during 2019, Pacific Packaging's ███

24  ████████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  ████████████████████████████████████████████

27  ███████

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

### E.   Pacific Packaging Concepts, Inc.'s Claimed Trademark.

Pacific Packaging claims to own a trademark registration for Fresh Start, which is limited to dietary supplements containing multi-vitamins and minerals in International Class 005.  While Pacific Packaging asserts rights over the Fresh Start mark, its own conduct and testimony shows that it does not purport to own Start-related marks.  Pacific Packaging has affirmatively allowed many other -Start marks to co-exist with its brand.  *See* Ball Opp. Decl. ¶¶ 22–28, Exs. 21–27 (coexistence agreements).  Indeed, Bob Cole testified that he was not only aware of Nutrisystem's use of Sure Start, but also that he does not "care if [Nutrisystem] use[s] Sure Start… You're entitled to it."  Bob. Dep. Tr. at 197:21–198:4.

## III.   ARGUMENT

### A.   Plaintiff Cannot Establish Confusion as a Matter of Law.

Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored on issues of confusion in trademark cases. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010) (quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002)).  Rule 56(c) authorizes summary judgment only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  Where, as here, the movant bears the burden of proof at trial, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial" and "the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  The non-moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [its] favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The test for likelihood of confusion is whether Nutrisystem's one-year use of

Fenwick & West LLP
Attorneys at Law

FENWICK & WEST LLP
ATTORNEYS AT LAW

Nutrisystem FreshStart for its weight-management shakes was likely to cause confusion or mistake or to deceive an appreciable number of reasonably prudent consumers in light of Pacific Packaging's claimed Fresh Start mark for its vitamins. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).  To succeed, Pacific Packaging must show confusion was probable, not just possible.  *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987).  To analyze likelihood of confusion, courts weigh eight nonexclusive factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent; and (8) likelihood of expansion of the product lines.  *Sleekcraft*, 599 F.2d at 348–49.

### B.    Plaintiff's Mark is Weak and Entitled to Only Narrow Protection.

The Ninth Circuit recognizes that, where a senior user selects a descriptive or even a suggestive mark, like "Fresh Start" for getting a fresh start on life, "some confusion with the marks of legitimate competitors might be expected." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998). Likewise, "selection of a mark with a common word . . . 'naturally entails a risk of some uncertainty and the law will not assure absolute protection.'"  *Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 445 (9th Cir. 1980) (quoting *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3d Cir. 1978)). "Absent a conceptually strong senior mark, the reverse confusion plaintiff will be unable to establish a likelihood of confusion, even if the junior user's commercial strength is likely to overwhelm the plaintiff in the marketplace." *Instant Media, Inc. v. Microsoft Corp.*, No. C 07-02639 SBA, 2007 WL 2318948, at *12 (N.D. Cal. Aug. 13, 2007).

Here, since Pacific Packaging's mark describes how one can use its vitamins to get a fresh start on life, its mark is descriptive, and inherently weak  Bob. Dep. Tr. at 82:9–82:21.  But even if Pacific Packaging's mark is suggestive, it is still

weak. *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1081–82 (9th Cir. 2005) (finding that descriptive or suggestive marks are inherently weak and entitled to minimal or no protection); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999) ("suggestive marks are presumptively weak"). Pacific Packaging provides no survey or consumer evidence to support an undisputed fact that its claimed mark is arbitrary. It is instead, descriptive or suggestive, just as its founder testified, and thus inherently weak. Bob. Dep. Tr. at 82:9–82:21.

Pacific Packaging's mark is weak for the additional reason that it exists in a crowded field of other Fresh Start marks for food, dietary supplements, and health services. A crowded field weighs strongly against confusion. *Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1225–26 (C.D. Cal. 2004); *Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1125 (C.D. Cal. 2003); *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 991 (C.D. Cal. 2002). The marks that Pacific Packaging coexists with include Fresh Start Kit (used by The Herbalist for supplements for weight loss support); Fresh Start Kit (used by Essential Oil sage for dietary supplements); Fresh Start Nutrition (used by Roxanne and Roger Ward for dietary supplements); Fresh Start Wellness (used by Fresh Start Wellness, LLC for clinical nutritional counseling services); Fresh Start (used by A Sugar Free Life for a dietary cleanse program); Fresh Start (used by Kern Wellness for a dietary cleanse program); and Fresh Start (used by Nantze Springs, Inc. for energy drinks). *See* Butt Opp. Decl. ¶ 29, Ex. 14 (Rog 3, Ex. A); *see also* Ball Decl. ¶¶ 4–5, 7–21, 53, 58–60, 80 Exs. 3–4, 6–20, 52, 57–59, 79.

Pacific Packaging is simply one of many who use a Fresh Start-related mark in the marketplace. Indeed, two other companies—Fresh Start Gourmet, which uses the Fresh Start mark to sell food, and Oregon Potato Company, which uses the Fresh Start mark to sell vitamin fortified smoothies—explicitly agreed that there was no confusion caused by Nutrisystem's FreshStart mark. *See* Butt Opp. Decl.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

¶¶ 26–28, Exs. 15, 16; Ball Opp. Decl. ¶¶ 10, 11, 78, Exs. 9, 10, 77.  Pacific Packaging does not claim that any of these other marks are causing any confusion.  Nor has Pacific Packaging policed or enforced its claimed mark against the field of many other Fresh Start marks to ensure that it maintained any exclusive rights.  Ball Decl. ¶¶ 58, 60, Exs. 57, 59 (RFAs 44, 47, 50, 53, 59, 117).  Pacific Packaging does not even know whether any of the issues that it speculates are caused by Nutrisystem are actually caused by any of these other companies.  This widespread use of Fresh Start-related marks is compelling proof of the mark's weakness.  *See M2 Software*, 421 F.3d at 1088; *see also Glow Indus.*, 252 F. Supp. 2d at 990–92 (citing cases in which non-party use of a term caused an inherently distinctive mark to be considered weak).

Pacific Packaging's mark also does not have commercial strength in the marketplace.  *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164 (9th Cir. 2009) (after placing mark on spectrum of distinctiveness, "[t]he second step is to determine the strength of this mark in the marketplace").  As a preliminary matter, Pacific Packaging fails to provide documentary evidence in support of any undisputed facts regarding the revenue, sales, or advertising numbers that it claims.[1]  Pacific Packaging purports to cite to its tax returns, as Exhibit C to the Bob Cole declaration (Dkts. 66-1, 66-2), but Exhibit C is a receipt from 1990.  It is not tax returns.  Next Pacific Packaging nakedly claims hundreds of millions in products and sales over forty years.  But when asked during discovery for documentation supporting these claims, Plaintiff refused to produce the documents stating either that it had no summary records or that its financial records "would not provide Nutrisystem with any information relevant to any issue in this case."  *See* Dkt. 32-1 at 15.  Plaintiff also repeatedly testified that it had no way of knowing its

---

[1] Nor does its Statement of Undisputed Facts identify any other undisputed facts or supporting documentation regarding its claimed commercial strength.  Instead of undisputed facts, Pacific Packaging makes a number of arguments in its motion that, while incorrect, are better suited for a jury, not summary judgment.

1   actual sales totals.  Bob Dep. Tr. at 28:17–23, 33:25–34:5.  Without any

2   documentary evidence to support its claim, Pacific Packaging fails to meet its

3   burden on summary judgment, especially for a claim on which it bears the burden

4   of proof at trial.  *United States v. Topkov*, No. CV 13-8204-GHK (JCGx), 2015 WL

5   12683792, at *2 (C.D. Cal. Feb 5, 2015) ("As Plaintiff is the moving party with the

6   burden of proof at trial, Plaintiff has the heavy burden to establish all of the

7   elements of its claim to be entitled to summary judgment.").

8          Nevertheless, the documentary evidence and testimony available shows that

9   Pacific Packaging has invested little in its claimed Fresh Start brand.  In the ▅▅▅▅

10  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

11  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

12  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

13  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

14  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

15  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

16  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅.

17         Underscoring the lack of brand recognition, Pacific Packaging is not listed

18  amongst the top 100 vitamin brands.  Ball Opp. Decl. ¶ 31, Ex. 30 (listing of 100

19  top multivitamin brands does not feature Plaintiff); Bob Dep. Tr. at 161:1–165:3.

20  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

21  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

22  ▅▅▅▅▅▅▅▅▅▅▅▅        *id.* ¶ 70, Ex. 69 (Deposition Transcript of Jennifer Cole

23  ("Jennifer Dep. Tr.")) at 64:10–16.  Finally, since Pacific Packaging has gone by

24  many names over the years, and has multiple products without a "Fresh Start" focus

25  (*see infra* Section D), Pacific Packaging fails to proffer undisputed evidence that all

26  of its revenues, sales, and advertising is connected to any "Fresh Start" brand.  *See*

27  Ball Opp. Decl. ¶¶ 39, 41–43, Exs. 38, 40–42(showing product images without a

28  Fresh Start mark visible); Jonathan Dep. Tr. at 53:9–54:19; Bob Dep. Tr. 71:22–

Fenwick & West LLP
Attorneys at Law

72:14, 76:7–77:4.  Absent commercial strength, Pacific Packaging's mark is entitled to only a "restricted range of protection."  *M2 Software*, 421 F.3d at 1081 (quoting *Sleekcraft*, 599 F.2d at 350).

A reasonable juror could conclude there is no risk of likelihood of confusion because of the narrow protection afforded to Pacific Packaging's weak mark.  *See, e.g.,* Nutrisystem's Statement of Genuine Issues of Material Fact ("Nutrisystem Statement") ¶¶ 1–7; 68–87, 89–118.

## C.   Pacific Packaging Admits that the Parties' Products are "Completely Different."

Courts have repeatedly found that even where products are in a similar space, or are even nearly identical (*e.g.* Infinity/Infiniti for stereos and cars), they can comfortably coexist without infringement.  *See M2 Software*, 421 F.3d at 1081–82 (no likelihood of confusion where both parties distributed music CDs in different genres); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 841 (9th Cir. 2002) (affirming no likelihood of confusion where the parties "indisputably [sold] related goods and services"); *Reeves v. General Nutrition Centers, Inc.*, No. SA CV10-01653 JAK (FFMx), 2012 WL 13018362, at *6 (C.D. Cal. Apr. 2, 2012) (finding no confusion between protein shakes and a diet program even though both offerings were in the nutritional field); *Sazerac Co. v. Fetzer Vineyards, Inc.*, 265 F. Supp. 3d 1013, 1036–37 (N.D. Cal. 2017) aff'd, 786 F. App'x 662 (9th Cir. 2019) (holding that the parties' products were not confusingly similar even where they were both alcohol, namely bourbon and wine).

Here, Pacific Packaging cannot credibly argue that there is no genuine dispute as to the dissimilarity of the products, particularly when its *own founder* admitted that they are "a completely different product . . . there is no comparison." Bob Dep. Tr. at 49:12–50:18.  He is correct.  Pacific Packaging is a packaged vitamin company, largely sold on racks at convenience stores and gas stations. Cindy Dep. Tr. at 177:2–177:24; 51:14–25.  Nutrisystem FreshStart was not sold on

FENWICK & WEST LLP
ATTORNEYS AT LAW

racks or in convenience stores or gas stations.  Butt Opp. Decl. ¶ 20, ¶ 24, Ex. 14 (Rog 6); Krausz Dep. Tr. at 48:6–48:9 ("We did not have any Fresh Start shakes in retail stores.").  Nutrisystem is a company guiding consumers on a weight loss journey with food, here milk shakes, and counseling.  Butt Opp. Decl. ¶¶ 2, 3, 7; Kindness Dep. Tr. at 327:4–11.  A consumer looking for a weight loss program, is not going to a gas station to find it.  Indeed, Pacific Packaging never offered weight loss services.  Ball Opp. Decl. ¶ 58, Ex. 57 (RFA 12); Jonathan Dep. Tr. at 62:18–63:3, 125:3–126:24.  Nor has it ever offered any food, let alone shakes.  *See id.*; Ball Opp. Decl. ¶ 48, Ex. 57 (RFA 5–11).

More still, Nutrisystem's shakes are milk based, and served as a liquid.  *See* Butt Opp. Decl. ¶ 8, Ex. 3, ¶ 16, Ex. 10.  Pacific Packaging sells pills that do not contain any dairy.  Bob Dep. Tr. at 103:5–9.  Nutrisystem's shakes are consumed like food and drink, and it thus promotes its shakes as tasty and delicious—with an emphasis on the richness of giant chunks of chocolate.  *See* Butt Opp. Decl. ¶¶ 13, 14, 16, Exs. 7, 8, 10; Krausz Dep. Tr. at 36:19–37:2.  Pacific Packaging's vitamins are not delicious.  Jonathan Dep. Tr. at 102:12–20; Bob Dep. Tr. at 88:2–15. Pacific Packaging's vitamin pills and capsules are sold in clear packets, stapled to a piece of cardstock, or in a box with a clear top containing multiple clear packets. Ball Opp. Decl. ¶¶ 40–43, Exs. 39–42 (product images of single packet vitamins); Bob Dep. Tr. at 88:16–89:13.  Nutrisystem's shakes are primarily sold in a cylinder tub, with a reusable scoop.  Butt Opp. Decl. ¶ 13, Ex. 7.  They are not stapled to cardstock.  *See id.*  Pacific Packaging's vitamin packets are generally sold for between one to two dollars.  Bob Dep. Tr. at 51:14–25; Jonathan Dep. Tr. at 102:5–11.  The Nutrisystem FreshStart shakes are sold for $39-79, which Pacific Packaging described as overpriced.  Krausz Dep. Tr. at 172:1–17; *cf.* Bob Dep. Tr. at 50:4–14.  In sum, as Pacific Packaging's founder testified, the products are as different as roller skates and space shuttles.  Bob Dep. Tr. at 49:20–50:18.

Pacific Packaging attempts to avoid these differences by claiming that the

FENWICK & WEST LLP
ATTORNEYS AT LAW

Nutrisystem FreshStart shakes are a dietary supplement.  That is not true.  For years, Nutrisystem has sold protein shake mixes as a beverage snack.  *See* Krausz Dep. Tr. at 40: 10–20 (explaining the shakes fit the calorie profile of a snack); Kindness at 117:13–118:20 (stating that the shakes are snacks in the meal plan). The Food and Drug Administration defines "food" to include food and drink.  21 U.S.C. § 321(f).  Food is highly regulated and must feature a Nutrition Facts panel. *See* 21 C.F.R. § 101.  The FDA separately addresses dietary supplements, which are "not represented for use as a conventional food."  21 U.S.C. § 321(ff) (definition of dietary supplement); Ball Opp. Decl. ¶ 32, Ex. 31.  Dietary supplements must feature a Supplement Facts panel.  DSHEA, Public law 103-417.  The FDA issued industry guidance to distinguish beverages from liquid dietary supplements, outlining such factors as how the products were marketed, how products were labeled, and whether the items intended to provide nutritive value, taste, and aroma. Ball Opp. Decl. ¶ 33, Ex. 32 (FDA Guidance at 2–5).  Nutrisystem's shake mixes are marketed as a milk-based shake snack, labeled according to FDA regulations for conventional foods with a Nutrition Facts panel, and intended to provide both nutritive value and a tasty treat.  Butt Opp. Decl. ¶¶ 16–17, Exs. 10–11; Kindness 117:13–118:20.  The Nutrisystem FreshStart shakes do not include a Supplemental Facts panel.  *See id.*  Thus, under FDA regulations, Nutrisystem's shake mixes are a food, not a dietary supplement.  *See* 21 U.S.C. § 321.

Pacific Packaging argues that by fortifying the shake mixes with vitamins and nutrients, Nutrisystem has converted a milkshake into a dietary supplement. Dkt. 66-4 at 12.  But in the words of the FDA, "it would strain common sense to interpret the [dietary supplement law] as authorizing the creation of a dietary supplement whenever any dietary ingredient is added to any conventional food." Ball Opp. Decl. ¶ 33, Ex. 32 (FDA Guidance at 4–5).  Pacific Packaging then points to an arbitrary assortment of dietary supplement powders from vitamin companies to claim Nutrisystem's shakes are similar.  *See* Dkt. 66-4 at 12; Dkt. 60-3 Ex. 36–

FENWICK & WEST LLP
ATTORNEYS AT LAW

41.  But Nutrisystem's *actual* competitors sell chocolate protein shakes that they market as food fortified with vitamins and minerals, labeled—like Nutrisystem's—with a Nutrition Facts panel.  *See, e.g.,* Ball Opp Decl. ¶¶ 29, 30, Exs. 28, 29 (product images with Nutrition Facts panels); *see also* Krausz Dep. Tr. at 109:2–5, Kindness Dep. Tr. at 349:8–10; MacDonald Dep. Tr. at 64:13–17.  Nutrisystem never marketed or represented Nutrisystem FreshStart as a dietary supplement.  Butt Opp. Decl. ¶ 25, Ex. 14 (Rog 4).  Nutrisystem properly filed its trademark applications in International Classes 29 and 44 because these classes cover the first week kits and shake mixes sold under Nutrisystem's Fresh Start mark, which do not require "Supplement Facts" information or FDA disclaimers.  *See* Butt Opp. Decl. ¶ 8, Ex. 3, ¶ 9, Ex. 4; *cf.* DSHEA, Public law 103-417.

Pacific Packaging fails to present any expert testimony, let alone an undisputed fact, that the Nutrisystem FreshStart shakes are anything other than a food.  Instead, its argument is an attempt to skirt the inconvenient truth that Pacific Packaging is hemmed in on all sides by many Fresh Start marks and can only claim narrow rights to its mark.

Finally, Pacific Packaging attempts to find similarity between the parties' offerings by noting that Nutrisystem has separately sold vitamins or discussed vitamins on its blogs.  These vitamins were not sold under a Fresh Start brand.  Butt Opp. Decl. ¶ 24.  Moreover, Nutrisystem vitamin sales amounted to only about ███ ██████████████ of its total sales for the Nutrition Division in 2019.  Butt Opp. Decl. ¶ 24, Ex. 13; (vitamin sales), *id.* ¶ 19, Ex. 12 (2019 Nutrition division revenue).  By contrast, Pacific Packaging claims that the Nutrisystem FreshStart ██████████████████████████████████.  Butt Opp. Decl. ¶ 19, 24, Exs. 12–13.  Customers do not come to Nutrisystem for vitamins or see them as a vitamin company.

Pacific Packaging's attempts to manufacturer similarities based on edge cases are insufficient to support a likelihood of confusion as a matter of law.

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1092 (C.D. Cal. 2003) (finding that "the mere fact that two products or services fall within the same general field . . . does not mean that the two products or services are sufficiently similar to create a likelihood of confusion"); *Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1076 (N.D. Cal. 2012) (finding that a small overlap was insufficient to support confusion; *see also AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 798 (6th Cir. 2004) (small overlap in products offered in stores was insufficient as a matter of law to show the companies were related). Nevertheless, even with these edge case arguments, Pacific Packaging repeatedly admits that it has not been harmed and has no credible evidence of actual confusion. *See infra* Section E.  This lack of harm or confusion reinforces the differences between the parties' products.

In addition to the host of differences between the parties' products, Pacific Packaging's admission that there is "no comparison" between the "completely different" products is proof alone that a reasonable juror could find that the parties offer dissimilar goods in separate markets.  *See, e.g.,* Nutrisystem Statement ¶¶ 8–10, 20; 23–67.

### D.     The Marks are Dissimilar in the Marketplace Context.

Courts consider whether the marks are similar in sight, sound, and meaning. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 633 (9th Cir. 2005).  When considering similarity, courts analyze each mark in the context of other identifying features.  *Id.*  Courts often find no likelihood of confusion despite similar or even identical marks.  *M2 Software*, 421 F.3d at 1082; *see Cohn*, 281 F.3d at 842.  Here, the dissimilarities between the marks weigh against a likelihood of confusion.

First, Pacific Packaging's brand is not predominately seen as "Fresh Start" as it wants to claim.  Pacific Packaging's distributors and resellers promote its products without any Fresh Start branding.  Ball Opp. Decl. ¶¶ 41–43, Exs. 40–42 (product images without Fresh Start mark); Bob Dep. Tr. at 71:22–72:14, 76:7–

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

77:4.  So, consumers can buy a package of their vitamins through Pacific Packaging's number one sales channel in a convenience store without knowing the "Fresh Start" brand.  But even when it uses the words "Fresh Start", it most commonly uses the brand "Fresh Start Vitamin Company."  Bob Dep. Tr. at 21:22–22:3, 22:23–23:9.  Pacific Packaging answers the phone as Fresh Start Vitamin Company.  Cindy Dep. Tr. at 213:1–213:9.  Pacific Packaging claims to use "Fresh Start Vitamin Company," not "Fresh Start," on both the front and back of its packaging.  *See* Ball Opp. Decl. ¶¶ 40–43*, Exs. 39–42 (product image); Bob Dep. Tr. at 29:25–30:10, 71:22–72:6.  Pacific Packaging's website is "freshstartvitamins.com" and its About Us page identifies itself as "Fresh Start Vitamin Co."  Ball Opp. Decl. ¶¶ 39, 44, Exs. 38, 43 (image of freshstartvitamins.com website).  Finally, Pacific Packaging uses the tagline: "trusted source since 1979" to further distinguish itself from the many other Fresh Start marks in the marketplace.  Bob Dep. Tr. at 42:16–43:24.  Any likelihood of confusion can be mitigated when "the name of the company invariably accompanied the [trademarked] slogan."  *Cohn*, 281 F.3d at 842 (quoting *Norm Thompson Outfitters, Inc. v. General Motors Corp.*, 448 F.2d 1293, 1298 (9th Cir. 1971)).  And the use of house marks like "Vitamin Company" (or NUTRISYSTEM) is a question for the jury.  *See Americana Trading Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1288 (9th Cir. 1992) (the role of prominence of house trademark is a jury question); *see also Skechers U.S.A., Inc. v. Vans, Inc.*, No. CV 07-01703 DSF (PLAx), 2007 WL 4181677, at *6 (C.D. Cal. Nov. 20, 2007) (holding that "[c]onfusion between even identical marks can be avoided by the context in which they marks are presented" and finding that the Skechers housemark avoided the likelihood of confusion).

Second, the look of Pacific Packaging's claimed Fresh Start mark is distinct from the Nutrisystem FreshStart mark.  In one setting, Pacific Packaging presents Fresh in blue, above Start in green, with both words in all caps.  Ball Opp. Decl.

¶ 39, Ex. 38; Bob Dep. Tr. at 42:16–43:24.  In another setting, Fresh Start is in bold red lettering.  Ball Opp. Decl. ¶ 40, Ex. 39.  Nutrisystem, by contrast, does not use all caps, or the colors blue or red in its presentation of Nutrisystem FreshStart.  And while it does use the color green, this is the green that it has used for decades that consumers associate with Nutrisystem.  Butt Opp. Decl. ¶ 6.  Similarly, the leaf image used by Nutrisystem is an image that Nutrisystem has used for decades, before Pacific Packaging changed its logo to include a leaf.  Butt Opp. Decl. ¶¶ 4–6, Exs. 1–2.

Given the multiple Fresh Start marks in the marketplace, consumers are able to distinguish between these different presentations.  *Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988) ("Simply put, 'a mark which is hemmed in on all sides by similar marks on similar goods . . . is merely one of a crowd of marks . . . [and] customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other.'").  Indeed, in approving for publication Nutrisystem's trademark application for the Fresh Start mark for shakes, the USPTO accepted this crowded field argument and found that there was no likelihood of confusion with others' Fresh Start marks, including Pacific Packaging's claimed mark.  Butt Opp. Decl. ¶¶ 8, 10, Ex. 3; Ball Opp. Decl. ¶¶ 4, 5, Exs. 3, 4.

Finally, Nutrisystem consistently uses its well-known NUTRISYSTEM housemark with the Nutrisystem FreshStart mark.  This fact alone presents a question for the jury and minimizes any potential likelihood of confusion.  *Move Press, LLC v. Peloton Interactive, Inc.*, No. 18-cv-01686 JAK (RAOx), 2019 WL 4570018, at *12 (C.D. Cal. Sept. 5, 2019) (denying Plaintiff's motion for summary judgment on confusion).

Viewing the parties' marks in the marketplace from the perspective of a potential purchaser, the marks are sufficiently dissimilar to weigh against a likelihood of confusion.  The USPTO found no confusion, and a reasonable juror

FENWICK & WEST LLP
ATTORNEYS AT LAW

could find likewise.  *See, e.g.,* Nutrisystem Statement ¶¶ 17, 19; 119–141.

**E.      Plaintiff Has No Undisputed Nor Credible Evidence of Confusion.**

Pacific Packaging attempts to claim actual confusion but cannot meet its burden to support this factor.  To demonstrate actual confusion, a plaintiff must offer "persuasive evidence that a significant number of consumers have formed a similar mental association."  *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 874 (9th Cir. 2002).  While evidence of actual confusion from an "appreciable portion of the actual consuming public" would weigh in favor of likelihood of confusion, "a handful of examples of anecdotal confusion are insufficient to support a finding confusion."  *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012); *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1054 (C.D. Cal. 2013).

Pacific Packaging has failed to present evidence of appreciable confusion.  And Nutrisystem is not aware of a single instance of actual confusion.  Butt Opp. Decl. ¶ 25, Ex. 14 (Rog 5).  Pacific Packaging has only identified a single instance of claimed confusion.  *See* Ball Opp. Decl. ¶ 54, Ex. 53 (supplemental response to Rog 4).  After seeing a Nutrisystem FreshStart commercial, a customer reached out to Pacific Packaging to confirm that he could still buy his vitamins from Pacific Packaging.  Ball Opp. Decl. ¶ 73, Ex. 72 (Deposition Transcript of Christian Hauter ("Hauter Dep. Tr.")) at 16:6–17:4; 68:4–69:9; Bob Dep. Tr. at 211:5–25.  Once he confirmed with Pacific Packaging that he could still buy his vitamins from Pacific Packaging, he ended his inquiry.  Hauter Dep. Tr. at 16:6–17:4, 68:4–69:9; *see* Bob Dep. Tr. at 211:5–25.  Pacific Packaging vaguely references "another customer" who reached out regarding Nutrisystem, but it was unable to provide any supporting evidence or details in discovery responses, testimony, or documents (and does not even cite this fact in its Statement).  *See* Dkt. 66-4 at 18.  If "a handful of examples of anecdotal confusion are insufficient," then a single allegation of confusion cannot support Pacific Packaging's burden here.  *See*

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Stonefire Grill*, 987 F. Supp. 2d at 1054.

Pacific Packaging's other purported evidence of confusion, the Sowers Rebuttal Report, is inadmissible for use in Pacific Packaging's case in chief and unreliable.  Sowers was only disclosed as a rebuttal witness to Nutrisystem's own survey expert, Hal Poret.  Poret's two surveys analyzing both forward and reverse confusion found no confusion between the parties' marks or products.  Declaration of Hal Poret ("Poret Decl.") ¶¶ 3–4, Ex. 2.  Since Plaintiff named Sowers as only a rebuttal expert, it cannot use his report to affirmatively establish confusion on matters where it has the evidentiary burden.  *See* Fed. R. Civ. P. 26(a)(2)(D).  And if Plaintiff is relying on the Sowers report here, then it has created a dispute of fact between the parties' two competing experts.  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1144 (9th Cir. 1997) ("As a general rule, summary judgment is inappropriate where an expert's testimony supports the nonmoving party's case.").

Nevertheless, Sowers' report is unreliable since it: (a) defines Nutrisystem's product as a dietary supplement, which it is not; (b) suggests that Nutrisystem sells its Nutrisystem FreshStart on Amazon, which it does not; and (c) is a Squirt style or lineup survey which is known to overstate any conceivable likelihood of confusion. Poret Decl. ¶ 6, Ex. 3 at 5–6.  Indeed, Sowers' survey was so flawed that it found 27% confusion rates between Pacific Packaging's products and other unrelated products using the marks "Youngevity" and "UB Super."  *See id.*

Finally, the prolonged coexistence of two products without evidence of actual confusion indicates a lack of likely confusion.  *Fetzer Vineyards*, 265 F. Supp. 3d at 1036 (citing *Cutting Edge Sols., LLC v. Sustainable Low Maint. Grass, LLC*, No. 14-cv-02770-WHO, 2014 WL 5361548, at *13 (N.D. Cal. Oct. 20, 2014)).  After millions of dollars in advertising and sales for Nutrisystem FreshStart for a full year, thousands of reviews, and an active social media presence, the lack of evidence of any appreciable confusion reflects that confusion was unlikely.  Butt Opp. Decl. ¶¶ 22, 25.  Accordingly, the Court should find that there is no actual

FENWICK & WEST LLP
ATTORNEYS AT LAW

confusion as a matter of law or, at a minimum, allow the jury to decide the dispute of fact as to actual confusion.  *See, e.g.,* Nutrisystem Statement ¶¶ 21, 22; 142–161.

### F.     The Substantial Difference in the Parties' Sales Channels and Marketing Supports No Likelihood of Confusion.

Beyond the use of the Internet, there is little commonality in the parties' channels of trade.  Nutrisystem sells 90% of its Nutrisystem FreshStart product through its exclusive Nutrisystem-branded website and sales channel.  Butt Opp. Decl. ¶ 19, Ex. 12, ¶ 25, Ex. 14 (Rog 6).  Consumers know when they go to a Nutrisystem website, or specifically call Nutrisystem, that they are dealing with Nutrisystem.  The remainder of Nutrisystem's FreshStart products are sold through the QVC and HSN home shopping channels on television, and a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See id.*; *see also* MacBride Tr. at 225:13–20.  Pacific Packaging does not sell in any of these channels.  Ball Opp. Decl. ¶ 58, Ex. 57 (RFA 78).  Its sales are primarily through retailers, convenience stores, and in the words of its founder, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See* Dkt. 87 at 19; Dkt. 66-1 (Declaration of Bob Cole) ¶ 5.  Nutrisystem FreshStart was not sold to retail or convenience stores.  Krausz Dep. Tr. at 48:6–48:9, 49:15–49:17.

Similarly, the parties' advertising channels have no overlap aside from the ubiquitous use of the Internet.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Butt. Decl. ¶ 22, ¶ 19, Ex. 12.  Nutrisystem further advertises through celebrity endorsements and has employed promotional representatives, like the Nutrisystem FreshStart Patrol, to promote its products.  Kindness Dep. Tr. at 296:12–297:21; Krausz Dep. Tr. at 36:3–136:13; Butt. Dep. Tr. at 298:2–299:7; Ball Opp. Decl. ¶ 37, Ex. 36.  Pacific Packaging uses none of these channels.  They have no TV advertisements, no celebrity endorsements, and no promotional representatives.  *See* Bob Dep. Tr. at 133:5–133:10; Jennifer Dep. Tr. at 193:22–194:7; Jonathan Dep. Tr. at 187:13–187:17; Ball Opp. Decl. ¶ 58,

FENWICK & WEST LLP
ATTORNEYS AT LAW

Ex. 57 (RFA 78).  Rather, where consumers purchase from Pacific Packaging, it is through Fresh Start Vitamin Company-branded channels, such as catalogue marketing, mail orders, telephone orders, or the freshstartvitamins.com website. Cindy Dep. Tr. at 119:5–119:8; Jonathan Dep. Tr. at 159:4–160:1; Ball Opp. Decl. ¶¶ 45, 46, Exs. 44, 45. ████████████████████████████████

████████████████████████████████████████  For example, during 2019, the only year Nutrisystem sold FreshStart, Nutrisystem spent ██████ ████████████████████████████████████████ ███████████████████████████████████████████ ██████████.  Butt. Decl. ¶ 19, Ex. 12; Ball Opp. Decl. ¶ 51, Ex. 50 (PPCI 2019 Tax Return).

Despite Pacific Packaging's claims about sales on Amazon, it is clearly not a focus of Pacific Packaging's marketing strategy.  *See* Bob Dep. Tr. at 120:10–122:13 (testifying that he does not know anything about advertising online).[2] ████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████  Nutrisystem's presence on Amazon is equally insignificant.  Nutrisystem has never sold its Nutrisystem FreshStart products through Amazon.  Krausz Dep. Tr. at 46:11–47:7 ("The company would not be selling Fresh Start shakes on Amazon, no."); Butt Opp. Decl. ¶ 21.  And its sales of Nutrisystem vitamins— which Nutrisystem did not sell with its FreshStart brand—████████████████ ████████████████.  *See* Butt Opp. Decl. ¶ 24, Ex. 13

Finally, Pacific Packaging points to unauthorized third-party sales on Amazon to contend that Nutrisystem and Pacific Packaging shared the same sales channel.  Dkt. 87 at 19–20.  But again, Nutrisystem never offered its Nutrisystem FreshStart products for sale on Amazon.  Pacific Packaging's unauthenticated

---

[2] Bob Cole was Pacific Packaging's Rule 30(b)(6) corporate designee on Nutrisystem's Noticed Topic 21 regarding the advertising of its goods.

FENWICK & WEST LLP
ATTORNEYS AT LAW

documents fail to show who listed the product on Amazon or whether the product in the document is in fact an authentic Nutrisystem product. *See* Dkt. 60-1 (Exhibit 1 to Champion Decl.). But even still, the parties' shared use of this ubiquitous Internet channel is legally insufficient under this factor. Courts reject the notion that the Internet alone shows convergent marketing channels. *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004) ("Given the broad use of the Internet today, the same could be said for countless companies. Thus, this factor merits little weight."); *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011) ("[I]t would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion."). A slight overlap on a dominant e-commerce platform, for non-FreshStart products, does not show a likelihood of confusion between the parties' marks. *See Oculu, LLC v. Oculus VR, Inc.*, No. 14-cv-0196 DOC(JPRx), 2015 WL 3619204, at *17 (C.D. Cal. June 8, 2015).

With these differences in the sales channels and marketing, there are genuine disputes of material fact and a reasonable juror will find that there is no likelihood of confusion.[3] *See, e.g.,* Nutrisystem Statement ¶¶ 18; 103–110, 176–186, 188.

## G.    The Parties' Consumers are Thoughtful in Their Purchases.

The type of goods and degree of care exercised by a typical consumer are highly relevant for assessing a likelihood of confusion. *Network Automation*, 638 F.3d at 1152. In analyzing this factor, the question is whether a "reasonably prudent consumer" would take the time to distinguish between the two product lines. *Surfvivor*, 406 F.3d at 634. There is a lower likelihood of confusion when buyers exercise more precision in the selection of their products. *Au-Tomotive*

---

[3] Plaintiff also falsely claims that Nutrisystem sells its Nutrisystem FreshStart in grocery stores and supermarkets. *See* Dkt 66-4 at 21. But since this is false, and Pacific Packaging knows it is false, it fails to cite any evidence for its claim.

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006). Regardless of price, courts note that purchasers may exercise a higher degree of care when "ingesting something for health purposes."  *See Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 894 (N.D. Cal. 2019) (citing *Reeves v. Gen. Nutrition Centers, Inc.*, No. SA CV10-01653 JAK (FFMx), 2012 WL 13018362, at *7 (C.D. Cal. Apr. 2, 2012)) (finding that consumers shopping for a diet plan or protein drink are "discerning" and "seeking to reach their health goals through the use of these products, which leads to a higher level of care").

Here, the parties sell meal plans and dietary supplements to consumers seeking health products who exhibit a higher level of care.  Nutrisystem's customers are diet intenders.  Nutrisystem's ██████████████████ ██████████████████████████████████████.  Butt Opp. Decl. ¶ 23; MacBride Dep. Tr. at 114:15–22.  Pacific Packaging's Statement provides no specific evidence of its target customer.  But during depositions, Pacific Packaging's witnesses described a thoughtful and considered purchase by its customers.  Bob Dep. Tr. at 167:17–168:5 (mail order customers take the time to review the labels and think about the purchase); Cindy Dep. Tr. at 224:11– 225:226:1 (describing Pacific Packaging's warning label to consult a doctor before using its products; interactions with customers that consult their doctor regarding Pacific Packaging's labels to manage interactions with current medications like "diabetic medication or antidepressants"; and Pacific Packaging's practice of regularly advising its customers that they should consult a doctor before purchasing Pacific Packaging's products).  Consumers choosing a meal plan with the serious goal of losing thirty to forty pounds would not confuse food and beverage products with a company exclusively offering vitamins.  Likewise, consumers who are encouraged to, and do, consult their doctors about potential interactions with their current medication regime would not mistakenly purchase meal plan subscriptions or a la carte food or beverage products from Nutrisystem's website or call center.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   All reasonable inferences from these facts weigh against any likelihood of

2   confusion.  *See, e.g.,* Nutrisystem Statement ¶¶ 189–193.

3       **H.   The Undisputed Facts Show Nutrisystem's Good Faith.**

4         The intent factor strongly favors Nutrisystem because, as Nutrisystem

5   outlined in its Motion for Partial Summary Judgment, it chose the Nutrisystem

6   FreshStart mark in good faith.  *See* Dkt. 55-1 at 21–24.  Pacific Packaging infers

7   bad faith when the undisputed facts reflect what Nutrisystem has consistently

8   maintained: it chose the mark in light of the crowded field.  *Cf.* Dkt. 66-4 at 22–23.

9   As the Ninth Circuit and courts in this district have repeatedly found, knowing use

10  of a mark in the belief that there is no likelihood of confusion is not bad faith.  *See*

11  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993) (citations

12  omitted); *M2 Software,* 421 F.3d at 1085 (finding no evidence of bad intent where

13  alleged infringer had notice of similar mark but chose to proceed with

14  independently-derived name in belief that use was non-infringing); *Move Press*,

15  2019 WL 4570018, at *9 (finding no willfulness when Peloton selected the mark

16  with the belief that it would not cause confusion with several other Peloton marks

17  used on different goods); *Fitbug Limited v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1194

18  (N.D. Cal. 2015) (determining that Fitbit acted in "good faith ignorance" even

19  though it learned of Fitbug before announcing or selling products); *BDO Remit*

20  *(USA), Inc. v. Stichting BDO*, No. 11-cv-04054 MMM (CWx), 2012 WL 12895658,

21  at *28 (C.D. Cal. Sept. 19, 2012) ("[P]rior knowledge of a senior user's trademark

22  does not necessarily give rise to an inference of bad faith and may be consistent

23  with good faith . . . .").

24        From the outset of this case, Nutrisystem has been forthright that it was

25  aware of a crowded field of dozens of other FreshStart, Fresh Start, and Fresh

26  marks and made the good faith decision to use the mark in light of this crowded

27  field and the strength of its NUTRISYSTEM housemark.  Butt Opp. Decl. ¶ 29,

28  ¶ 25, Ex. 14 (Rog 3, 10, 11, Ex. A); Ball Opp. Decl. ¶ 53, Ex. 52 (RFAs 104, 105,

FENWICK & WEST LLP
ATTORNEYS AT LAW

107); Dkt. 24 at 4 (26(f) Report).  This is not an argument Nutrisystem "now claims;" this is what Nutrisystem has always maintained.  *Cf.* Dkt. 66-4 at 22. Indeed, several years ago, Nutrisystem used both a Sure Start and a Simply Fresh mark with no complaints from Pacific Packaging.  *See* Ball Opp. Decl. ¶¶ 2, 3, Exs. 1, 2.  Since then, more companies have emerged using a Fresh Start or similar mark.  *See* Butt Opp. Decl. ¶ 29, ¶ 25, Ex. 14 (Rog 3, Ex. A).  And when Nutrisystem applied to register its Fresh Start mark for use on its shake mixes, the USPTO endorsed Nutrisystem's good faith belief.  *See* Butt Opp. Decl. ¶ 8, Ex. 3, ¶ 10.  The USPTO **twice** considered Pacific Packaging's mark and several dozen others when reviewing Nutrisystem's application but found no likelihood of confusion and approved the mark for publication.  *See* Butt Opp. Decl. ¶¶ 8, 10; Ball Opp. Decl. ¶¶ 4, 5, Exs. 3, 4.  Nutrisystem signed two coexistence agreements with companies using a Fresh Start mark on food and beverages—including a company offering drinks fortified with vitamins—and both of these companies explicitly acknowledged the lack of likelihood of confusion.  Butt Opp. Decl. ¶ 27, Ex. 15, ¶ 28, Ex. 16.  And Nutrisystem received no reports of confusion out of ██████████.  *See supra* Section E.

Nonetheless, Pacific Packaging argues that Nutrisystem acted in bad faith because it sought to enforce its attorney-client privilege in the counsel it received relating to trademark search reports.  Dkt. 66-4 at 22–23.  But Nutrisystem is not required to breach privilege.  *See* Dkt. 44 (granting motion to compel as to search report but denying it as to attorney communications).  Pacific Packaging infers bad faith where it lacks facts.  Based on the undisputed facts, Nutrisystem chose the Fresh Start mark in good faith as a matter of law.  *See, e.g.,* Dkt. 55-1 at 21–24; Nutrisystem Statement ¶¶ 12–16; 194–203.

## I.    The Parties Are Not Expanding Into Each Other's Markets.

Pacific Packaging's Statement fails to identify any undisputed facts supporting its claims that the parties are expanding into each other's markets.  This

FENWICK & WEST LLP
ATTORNEYS AT LAW

is not surprising since Nutrisystem stopped use of Nutrisystem FreshStart mark more than a year ago.  Butt Opp. Decl. ¶ 19; *see also* Dkt. 66-4 at 4.  With no use, there is no likelihood of expansion.  Nevertheless, the arguments Pacific Packaging makes in its brief (unsupported by its Statement) fail.  It cites to unsubstantiated and years old claims that it may expand in the future.  But hopes, without action, are insufficient to support a claim of expansion or support a likelihood of confusion.  *Blue Ribbon Feed Co. v. Farmers Union Cent. Exch., Inc.*, 731 F.2d 415, 422 (7th Cir. 1984) (mere hope of expansion insufficient).  A reasonable consumer would not look at Pacific Packaging's decades long focus on selling vitamins and think that Pacific Packaging is suddenly likely to start offering milk shakes or weight loss services.  Indeed, Pacific Packaging has repeatedly testified that it has no such intention of expansion.  Bob Dep. Tr. at 112:5–20; Jonathan Dep. Tr. at 226:3–228:23.  This factor favors Nutrisystem.  *See, e.g.,* Nutrisystem Statement ¶¶ 204–208.

## IV.   CONCLUSION

Drawing all reasonable inferences from the disputed and undisputed facts in Nutrisystem's favor, a reasonable juror would find no likelihood of confusion.  If anything, the undisputed evidence supports a finding that there is *no* likelihood of confusion as a matter of law.  The Court should deny Pacific Packaging's motion.[4]

Dated: February 12, 2021              FENWICK & WEST LLP

                                      By: */s/ Eric Ball*
                                      Eric Ball
                                      Attorneys for Defendants
                                      NUTRISYSTEM, INC., and
                                      NUTRI/SYSTEM IPHC, INC.

---

[4] Pacific Packaging's state law claims fall with its trademark infringement claim under the Lanham Act.  As with its Lanham Act claims, Pacific Packaging fails to prove confusion as a matter of law and its motion should be denied.  *Lambert Corp. v. LBJC Inc.*, No. 2:13-cv-00778-CAS(JCGx), 2014 WL 2737913, at *10 (C.D. Cal. June 16, 2014) ("Since the Court finds that summary judgment should be denied to plaintiff on its Lanham Act claim, the Court also finds that summary judgment should be denied as to [UCL] claims").

FENWICK & WEST LLP
ATTORNEYS AT LAW