O

# United States District Court
# Central District of California

| | |
|---|---|
| PACIFIC PACKAGING CONCEPTS, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NUTRISYSTEM, INC, et al.,<br><br>　　　　　Defendants. | Case No. 2:19-cv-04755-ODW (Ex)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [51]** |

## I.　INTRODUCTION

Plaintiff Pacific Packaging Concepts, Inc. initiated this action against Nutrisystem, Inc. and Nutri/System IPHC, Inc. (collectively, "Nutrisystem") for trademark infringement because Nutrisystem marketed and sold products using Pacific Packaging's "Fresh Start" mark. (Compl., ECF No. 1.) Pending before the Court is Nutrisystem's Motion for Partial Summary Judgment, which is fully briefed. (MPSJ, ECF Nos. 51, 55-1; Opp'n, ECF No. 83; Reply, ECF No. 81.) For the reasons discussed below, the Court **GRANTS IN PART AND DENIES IN PART** Nutrisystem's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.   BACKGROUND

Pacific Packaging sells vitamins and mineral supplements under the name Fresh Start Vitamin Company and claims rights to a federal trademark registration for "Fresh Start" in dietary supplements containing multivitamins and minerals. (Nutrisystem's Statement of Uncontroverted Facts ("NUF") 7, 11, ECF No. 55-2.) Pacific Packaging has never licensed its Fresh Start mark and has no intention to license the mark. (NUF 22, 23.)

In December 2018, Nutrisystem released a new weight management product, Nutrisystem FreshStart, which included a meal kit and a probiotic shake mix. (NUF 2.) Nutrisystem created its "FreshStart" product line with knowledge that dozens of companies, including Pacific Packaging, use a Fresh Start or FreshStart mark in commerce. (NUF 16, 17.) Nutrisystem sold its FreshStart products for approximately one year. (NUF 3–4.) During the year Nutrisystem sold its Nutrisystem Fresh Start product line, Pacific Packaging's sales increased for the first time in eight years. (NUF 14.)

On May 31, 2019, Pacific Packaging initiated this action claiming that Nutrisystem infringed its trademark by using the Fresh Start mark in connection with its new product. (*See generally* Compl.) Pacific Packaging asserted claims for trademark infringement, false designation of origin, and trademark dilution under federal law; claims for unfair competition and false advertising under California state law; and common law trademark infringement. (*Id.* ¶¶ 30–94.) On December 3, 2020, the Court dismissed Pacific Packaging's claims for counterfeiting and trademark dilution pursuant to the parties' stipulation. (Min. Order, ECF No. 50.) Presently before the Court is Nutrisystem's Motion for Partial Summary Judgment as to potential remedies and parties.

## III.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The Court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that sets out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine

dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

Nutrisystem moves for partial summary judgment on four issues—three concern potential remedies, and one concerns the potential dismissal of Defendant Nutri/System IPHC, which was dissolved in May 2019. First, Nutrisystem argues that Pacific Packaging cannot seek royalty damages for trademark infringement because Pacific Packaging has never licensed and will never license its mark—making any royalty award speculative. (MPSJ 11–14.) Second, Nutrisystem contends that disgorgement of profits is an improper remedy under Pacific Packaging's reverse confusion-based theory of trademark infringement. (*Id.* at 16–19.) Third, Nutrisystem asserts that compensatory profits are also improper for a reverse confusion-based claim because there is no evidence of lost profits. (*Id.* at 19–21.) Fourth, Nutrisystem argues that Nutri/System IPHC Inc. should be dismissed because the company has not existed since May 31, 2019, and Nutrisystem assumed its assets and liabilities. (*Id.* at 24–25.)

The Court addresses each of Nutrisystem's arguments in turn.

### A. Royalties

Pacific Packaging seeks royalties for Nutrisystem's use of the Fresh Start mark. Nutrisystem claims that Pacific Packaging has not provided a legitimate basis on which to calculate royalties because Pacific Packaging "has never licensed any of its marks and claims it will never license any of its marks." (MPSJ 11 (internal quotation marks omitted).) As such, Nutrisystem contends an award of royalties would be improperly based on speculation. (*Id.* at 11–14.) Pacific Packaging argues that a

reasonable royalty is permissible even though it had no intent to license the mark. (Opp'n 8–11.)

"Reasonable royalties, which are a calculation of the hypothetical licensing royalties that an infringer would have paid to the senior owner of the mark, can be recovered as a measure of damages in trademark infringement cases." *QS Wholesale, Inc. v. World Mktg., Inc.*, No. SA 12-CV-0451 (RNBx), 2013 WL 1953719, at *4 (C.D. Cal. May 9, 2013). "Reasonable royalties are a form of damages for lost profits, since they focus on the licensing fees that were never paid by an infringer using a party's mark, and like other modes of calculating lost profits, they must be proved with reasonable certainty." *Lodestar Anstalt v. Bacardi & Co.*, No. 2:16-cv-06411-CAS(FFMx), 2019 WL 8105378, at *13 (C.D. Cal. July 3, 2019) (internal quotation marks omitted). "For this reason, reasonable royalties are most often granted in a trademark context where the parties had a prior licensing agreement . . . or where the plaintiff previously had engaged in the practice of licensing the mark to a third party." *Id.* (internal quotation marks omitted). "In the absence of a legitimate proposed basis on which to calculate a royalty, awarding a reasonable royalty . . . would be impermissibly speculative." *M2 Software Inc. v. Viacom, Inc.*, 223 F. App'x 653, 655 (9th Cir. 2007).

Here, there is no legitimate basis on which to calculate a royalty award. The record contains no evidence of a prior licensing agreement or any business negotiations with respect to Pacific Packaging's Fresh Start mark. Indeed, even the cases Pacific Packaging relies on fail to support its contention that royalties are appropriate in the absence of such evidence. (*See, e.g.*, Opp'n 10 (citing to *QS Wholesale*, 2013 WL 1953719, at *5, which found a royalty appropriate in the absence of a prior license or history of licensing the trademark where "*there [was] a detailed record of business negotiations*" to purchase the mark, and consequently there was evidence of the mark's fair and reasonable price (emphasis added)).)

In the absence of any evidence of a prior license or business negotiations concerning the Fresh Start mark, Pacific Packaging seeks to rely on experts that speculate as to the royalty rate the parties might have agreed to in a hypothetical negotiation. (Opp'n 11–13.) But as another court in this district has found, such "opinions do not cure [the Plaintiff's] failure to provide any evidence of a prior license or negotiations with a third party to license the" trademark. *See Lodestar Anstalt*, 2019 WL 8105378, at *14. So while Pacific Packaging is correct that intent to license the mark is not required to recover royalties, the company must establish a reasonable basis on which to base a royalty—a task it fails to accomplish.

Accordingly, the Court finds that Pacific Packaging is not entitled to a royalty.

**B.    Disgorgement**

Pacific Packaging also seeks disgorgement of Nutrisystem's profits derived from the company's use of the Fresh Start mark. Nutrisystem contends that disgorgement of its profits is improper under a theory of unjust enrichment to the extent that Pacific Packaging seeks disgorgement for reverse confusion.

The Ninth Circuit recognizes two distinct claims in the trademark infringement context—forward confusion and reverse confusion. "Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005); *see also* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:10 (5th ed. 2021) ("The traditional pattern of classic 'forward confusion' occurs when customers mistakenly think that the junior user's goods or services are from the same source as or are connected with the senior user's goods or services."). "By contrast, reverse confusion occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one." *Surfvivor*, 406 F.3d at 630.

Here, Pacific Packaging, the senior mark holder, puts forth evidence that one customer was confused about Nutrisystem's use of the Fresh Start mark. (NUF 48,

49.) Specifically, Christian Hauter, a longtime Pacific Packaging customer, saw Nutrisystem's commercial for its FreshStart products and then contacted Pacific Packaging to ask if Nutrisystem acquired the company or was just using the name Fresh Start. (*See id.*) This is a classic example of *forward confusion*. *See Surfvivor*, 406 F.3d at 630; 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:10 (5th ed. 2021) ("Forward confusion will be likely to occur . . . when people . . . who know of the local senior user first come into contact with the junior user's nationally advertised and distributed product and, because of the similarity of the marks, mistakenly think that the junior user is an offshoot or licensee of the senior user."). Beyond this one instance of forward confusion, Pacific Packaging has *no evidence* of reverse confusion. Thus, even if disgorgement is an appropriate remedy for cases where there is reverse confusion, (*see* Opp'n 16–17), there are no grounds to disgorge Nutrisystem's profits based on reverse confusion in *this* case.

Accordingly, the Court finds that Pacific Packaging may not seek disgorgement of Nutrisystem's profits based on a theory of reverse confusion.[2]

### C. Compensatory Profits

Pacific Packaging also seeks a compensatory award of Nutrisystem's profits due to its alleged infringement. Nutrisystem claims that Pacific Packaging is not entitled to a compensatory award of profits based on reverse confusion. (MPSJ 19–21 ("Pacific Packaging has no evidence of lost profits and has no claim to profits as a compensatory remedy.").) Pacific Packaging does not dispute that it lacks evidence of lost sales or profits based on Nutrisystem's use of the Fresh Start mark.

Based on the absence of evidence concerning Pacific Packaging's lost profits, and the discussion above, the Court agrees that there are no grounds for a compensatory award based on reverse confusion. Accordingly, the Court finds that

---

[2] In light of the Court's finding, it does not consider Nutrisystem's remaining arguments concerning whether Pacific Packaging is entitled to disgorgement under its reverse confusion theory.

Pacific Packaging may not seek a compensatory award of Nutrisystem's profits based on reverse confusion.

### D. Nutri/System IPHC, Inc.

In its Complaint, Pacific Packaging asserts claims against both Nutrisystem and Nutri/System IPHC, Inc, a Delaware corporation. (*See* Compl.) In May 31, 2019, Tivity Health dissolved Nutri/System IPHC. (NUF 43.) Nutrisystem claims that Nutri/System IPHC's assets and liabilities were transferred to Nutrisystem upon the company's dissolution, and thus, Nutri/System IPHC should be dismissed from this action. However, Nutrisystem fails to submit evidence to support its claim.

Regardless, under Delaware law a dissolved corporation maintains the ability to prosecute and defend lawsuits for at least three years. *See Boeing Co. v. KB Yuzhnoye*, No. CV 13-00730-AB (AJWx), 2015 WL 12803452, at *2 (C.D. Cal. Nov. 3, 2015); 8 Del. C. § 278. As Nutri/System IPHC existed during the year that Fresh Start products were sold, it appears that the company may have played some role in the alleged harm in this case. Therefore, the Court finds no grounds on which to dismiss Nutri/System IPHC at this time and **DENIES** Nutrisystem's request to dismiss Nutri/System IPHC.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion. (ECF No. 51.) The Court **GRANTS** Defendants' Motion as to potential remedies. The Court **DENIES** Defendants' Motion to the extent it seeks to dismiss Nutri/System IPHC.

IT IS SO ORDERED.

July 23, 2021

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**